## CHARLES F. GARRIGUES CO. v. INTERNATIONAL AGRICULTURAL CORPORATION.

(Supreme Court, Appellate Division, First Department. December 31, 1913.)

BROKERS (§ 66*)—COMPENSATION—CONCEALMENT OF FACTS.

Plaintiff was not entitled to commissions which defendant agreed to pay it on a sale of property for a foreign corporation, all of the stock of which was owned by defendant, where plaintiff represented to defendant that it was necessary to pay eight-ninths of such commission to a third person, but concealed the fact that such third person was the agent of such foreign corporation, receiving a salary and commission for making sales of property of that character, since it was plaintiff's duty to inform defendant that part of the commission was to be paid to defendant's agent, notwithstanding the fact that the foreign corporation, though owned by defendant, was a separate corporate entity.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 51; Dec. Dig. § 66.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Charles F. Garrigues Company aganst the International Agricultural Corporation. From orders sustaining a demurrer to a separate defense and denying an application to resettle the first order by granting leave to plead anew, defendant appeals. Reversed, and demurrer overruled.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Joseph M. Hartfield, of New York City, for appellant.
Nathan D. Stern, of New York City, for respondent.

DOWLING, J. Plaintiff sues to recover the sum of $29,376.10 as the balance of the commission to which it claims to be entitled under the terms of a written agreement between the defendant and the E. I. du Pont de Nemours Powder Company, whereby the commission to be paid to plaintiff by defendant (which latter had employed the former as its broker to negotiate the sale of the muriate of potash covered by the agreement) was fixed at $2.25 per ton.

The facts set up in the separate defense, and which must be deemed to be admitted by the demurrer, are as follows: That at the time of the signing of the agreement in question defendant was the owner of 100 "Kuze" or shares (being the entire outstanding issue of shares) of the "Kaliwerke Sollstedt Gewerkschaft" organized under the laws of the Kingdom of Prussia or Empire of Germany, and that at the time of the agreement in question the defendant was the single and entire owner of said Gewerkschaft. That the agent in America of the Gewerkschaft was a corporation known as Heller, Hirsch & Co. (hereinafter called the "agent"), which was receiving for its services $40,-000 per annum and 3 per cent. upon new business in potash obtained from American customers. That, knowing all these facts, plaintiff and said agents represented to defendant that said agent could sell for the Gewerkschaft and defendant as its owner to the E. I. du Pont de Nemours Powder Company a certain quantity of muriate of potash for the years 1910, 1911, and 1912 (corresponding with the agreement actually made), but that it would be necessary for the Gewerkschaft and defendant to pay a commission of 25 cents per ton to plaintiff and a further sum of $2 per ton to a certain person or persons not disclosed in order to make said contract. That plaintiff and the agent wrongfully and fraudulently concealed from the Gewerkschaft and the defendant that said agent was in reality to receive the said sum of $2 per ton out of the commission, and although knowing that defendant, because of its entire ownership of the Gewerkschaft, would really have to pay the commission, plaintiff and the agent wrongfully concealed from defendant the fact that plaintiff had agreed to pay said $2 out of the stipulated total of $2.25 per ton, to the agent. That such agreement to pay said agent $2 per ton was made at the time of the making of the contract to sell the potash, plaintiff knowing at the time that the agent represented the Gewerkschaft and acted for it and defendant, and knowing as well of defendant's entire ownership of the Gewerkschaft. That the agent subsequently demanded its 3 per cent.

on the total amount sold under the contract, as plaintiff knew. It is further alleged:

"XV. That the concealment by the plaintiff and said Heller, Hirsch & Co. of the fact that the said Heller, Hirsch & Co. was to receive $2 of said $2.25 commission, was a concealment of a material fact, and defendant would not have signed the said paper writing, or would not have employed the said plaintiff, except that it relied upon the statements made to it by the said plaintiff and the said Heller, Hirsch & Co. that it was necessary to pay the said sum to some third person or persons, in order to make said sale, and would not have made said agreement or entered into said employment, if the said plaintiff and the said Heller, Hirsch & Co. had not wrongfully concealed from it and the said Gewerkschaft the fact that the said Heller, Hirsch & Co. was to receive any portion of said commission, and this defendant relied, in the execution of said paper, upon the statements and representations made to it by the said plaintiff and the said Heller, Hirsch & Co., which statements and representations were false, as herein set forth."

We are of the opinion that these facts established a defense to the cause of action set forth herein. Plaintiff alleges that he was acting as a broker, employed by defendant, and that he procured for defendant the contract in question. His duties to his principal were as laid down by Chief Judge Rugor in Murray v. Beard, 102 N. Y. 605, 7 N. E. 553:

"We think the judgment was properly ordered on that ground, and that it can also be sustained upon the ground of fraudulent suppression of material facts by the plaintiff in making the contract, as well as that it was contra bonos mores. * * * An agent is held to uberrima fides in his dealings with his principal, and if he acts adversely to his employer in any part of the transaction or omits to disclose any interest which would naturally influence his conduct in dealing with the subject of the employment, it amounts to such a fraud upon the principal, as to forfeit any right to compensation for services. Story on Agency, §§ 31, 334; Story's Eq. Jur. § 315; Ewell's Evans on Agency, 268; Dunlap, Paley on Agency, 105, 106; Carman v. Beach, 63 N. Y. 97, 100."

In the recent case of Dickinson v. Tysen, 103 N. E. 703 (Nov., 1913), the Court of Appeals emphasized the duty of brokers to act "fairly, honestly and in good faith" toward their principal.

In Low v. Woodbury, 107 App. Div. 298, 95 N. Y. Supp. 336, it is said:

"The concealment by an agent of facts which are material to his principal's interests, especially after inquiry made, amounts in law to fraud. Like other agents, the broker is required to exercise the utmost good faith towards his principal; and if, in the course of his agency, he has committed a fraud on his principal, he is not entitled to his commission."

The allegation constituting the separate defense establishes a clear case of the fraudulent suppression of a material fact from the principal to its financial damage, since it was being induced by false representations to agree to pay plaintiff a fixed sum, in ignorance that nine-tenths of it was being paid in reality to its own agent with whom it had a valid subsisting agreement to pay both annual salary and commission. Nor should the fact that defendant is a separate corporate entity from the Gewerkschaft save plaintiff from the consequences of his wrong; for, being the entire owner of the foreign corporation, defendant was equally damaged, whether the loss was sustained to its

own treasury, or that of its own concern. That the doctrine of corporate entity will not be allowed to stand in the way of circumventing fraud or administering justice has been held in Goss v. Goss, 147 App. Div. 698, 132 N. Y. Supp. 76. See, also, Buffalo Loan Co. v. Medina Gas Co., 12 App. Div. 199, 42 N. Y. Supp. 781; Morowitz on Corporations, § 277.

The order appealed from will therefore be reversed, with $10 costs and disbursements, and the demurrer to the separate defense overruled, with costs. All concur.