ALFRED D. WARNER, JR., and EZEKIEL COOPER, Receivers of Horrigan Contracting Company,

*vs.*

LOGUE REALTY COMPANY.

*New Castle, Feb.* 21, 1917.

Where land subject to judgment liens against certain of the co-tenants is sold in partition sale for an amount equal to the amount of the judgments less than it would have been sold for, were the judgments not liens on the land, the amount of the judgments, debt, interest, and costs, should be added to purchase price before distribution of fund.

Tenant in common, who, after having made improvements on land enhancing its value, conveyed land as a matter of business expediency to his son, who conveyed it to corporation of which the tenant in common was virtually owner, the corporation will be permitted, on partition sale of land, to stand in position of tenant in common and receive allowance for improvements.

On partition sale of land, allowance will be made to tenant in common for improvements he has placed upon land and which have enhanced value thereof, though interest of co-tenants has been conveyed subsequent to the improvements, where co-tenants did nothing to enhance value of land; such allowance not being a lien upon the land, but being in the nature of an equitable charge upon it.

PETITION FOR PARTITION.  The facts appear in the opinion.

RICE, J., sitting.

*Caleb S. Layton*, for the petitioners.
*Daniel O. Hastings*, for the Logue Realty Co.

RICE, J.   Cornelius J. Horrigan and James Logue were in 1909, at the time of the death of Cornelius J. Horrigan, owners as tenants in common of a lot or parcel of land in the City of Wilmington.   Horrigan died intestate, leaving to survive him his widow and three children.   Dennis J. Horrigan, one of the children, died intestate and unmarried in February, 1914.   In September, 1914, the widow and the two surviving children of Cornelius J. Horrigan conveyed their interest in the said lot of land to the then recently appointed receivers of the Horrigan Contracting Company.   The receivers filed a petition for partition of the land and as it could not be advantageously divided, the land was sold under order of the court.

James Logue in 1910 conveyed his interest in the land to his son, who in 1913 conveyed the same to the Logue Realty Company.   Most of the stock of this company is owned by James Logue.

The Logue Realty Company filed a petition in which two judgments are set forth, one against Margaret M. Horrigan, widow, William J. Horrigan and Anna Horrigan, his wife, and

John T. Horrigan, dated June 22, 1914, and the other against William J. Horrigan, dated May 1, 1914. The petitioner claims that these two judgments were liens against the land sold in the partition proceeding, and asks that the amount of the judgments, debts, interest and costs, be added to the sum for which the land was sold before distribution should be made.

Counsel for the receivers does not deny that the two judgments were liens on the land, nor does he contend that this claim of the Logue Realty Company should not be allowed.

The court is of the opinion that the sum for which the land was sold was to an amount equal to the amount of the two judgments less than it would have been sold for were the judgments not liens on the land, and, therefore, it is proper that the amount of the two judgments, debt, interest and costs should be added to the purchase price before distribution of the fund is made.

The Logue Realty Company in its petition also asks the court to make an allowance out of the proceeds of the sale for improvements to the land made by James Logue and the Logue Realty Company. The improvements were made pursuant to an agreement made between the owners in common, James Logue and Cornelius J. Horrigan. It was understood between the parties that Logue was to make and pay for the improvements, and Horrigan was to proportionately reimburse him for the same.

The land when purchased by Logue and Horrigan was considerably below grade. Logue under the terms of the agreement filled in the land to grade.

The Logue Realty Company claims that James Logue and the company expended $670 in making the improvements, and asks that one-half of this sum, in addition to what it is otherwise entitled, be paid to the Logue Realty Company out of the proceeds of sale.

Evidence was introduced to show that the land had been enhanced in value by reason of the improvements, in an amount greater than the cost of the improvements.

Counsel for the receivers of the Horrigan Contracting Company contends that the Logue Realty Company should not be allowed anything for the improvements out of the proceeds of

the sale for the reasons: (1) That there is no lien in partition proceedings in favor of the successor of one joint tenant for improvements made by the tenant against the share of the co-tenants; and (2) that to make an allowance for the improvements would be the recognition of a secret lien on the land, which would be against the interest of the receivers.

It has very generally been held where land is owned in common and one of the tenants with the consent and approval of his co-tenant, in good faith and without enbarrassment to the co-tenant, makes substantial and permanent improvements to the land, that in a partition proceeding for a division of the land, the court will as a matter of equity take into consideration the improvements, and assign to the improving tenant that half of the land which has been improved, where it is practical to do so without prejudice to the interests of the co-tenant.

It has also likewise been held, but not so generally, where the land cannot be divided, and the land is sold under partition proceedings, and one of the tenants has made improvements to the land with the consent of his co-tenant, that the improving tenant will be compensated proportionately for the enhanced value of the land by reason thereof, out of the proceeds of the sale. The reason being that when one of the tenants has by his improvements enhanced the value of the land owned in common, without injury or embarrassment to his co-tenant, the other tenant as a matter of equity should contribtue his share for the improvements before being allowed to receive the benefits of the same. He is not, under such circumstances, permitted to receive benefits at the expense of the improving tenant.

There would be little difficulty in arriving at a decision in the present case if the original owners in common were the parties to the petition for partition. In this case one of the original owners in common of the land is deceased, and his heirs at law have conveyed their interests to the receivers of the Horrigan Contracting Company, which company filed the petition for partition. The other original owner in common conveyed his interest, through an intermediary, to the Logue Realty Company.

The transfer from James Logue, through his son, to the Logue Realty Company was a matter of business expediency. Logue owns all the shares of the Logue Realty Company, with the exception of a sufficient number of shares to qualify others as officers and directors of the company.    It was practically a transfer from  Logue as a person to Logue as a company.    It would only seem  equitable  and  fair, under the circumstances, to permit the Logue Realty Company to stand in the same position with respect to the improvements as Logue would have stood in had the transfer not been made.

Logue both personally and as the Logue Realty Company made the improvements, and Logue is the one who would receive the benefit of an allowance made to the Logue Realty Company.

The next question raised is,  whether an allowance for the enhanced value of the land by reason of the improvements should be made in view of the fact that the interest of the Horrigans has been conveyed  to and is owned by the receivers of the Horrigan Contracting Company.

It is not disputed that the land was increased in value by reason of the improvements, and that they were made by and with the consent of Cornelius J. Horrigan.  If the improvements had not been made it may be assumed that the land would only have been sold for that sum represented by the sum it was sold for less its enhanced value by reason of the improvements.

Not to make an allowance to the improving tenant for the improvements would be permitting the receivers to receive benefits when neither the receivers nor their predecessors in interest had  contributed anything to produce those benefits.    Benefits received under such circumstances would be at the expense of the improving tenant.    Counsel for the receivers contends that an allowance to the Logue Realty Company would be the enforcement of a secret lien on the land in behalf of the improving tenant against the interest of the creditors of the co-tenant. The court does not look upon such an allowance as a lien upon the land, but  it is in  the  nature of an equitable  charge  upon it.  And it will only be considered as such when under the facts  it is  equitable  and  fair  to  make  an  allowance, and

where it can be done without injury to the interests of the co-tenant. It is true where an allowance is made to the improving tenant for the resulting enhanced value of the land, that the co-tenant receives less than if the allowance had not been made. This alone, however, would not be dealing unfairly with him, for he has done nothing to bring about the enhanced value of the land.

In the present case after an allowance for the improvements is made to the Logue Realty Company the receivers will receive a larger sum than they would have received had the improvements not been made, for it is in evidence that the value of the land was increased by reason of the improvements several hundred dollars in excess of the expense thereof, and the company seeks to be reimbursed for a proportionate share of the improvements only.

I am clearly of the opinion that under the facts of this case it is only fair and equitable to direct that the sum representing the amount of the two judgments be added to the purchase price, and that the Logue Realty Company be allowed, in addition to its one-half share of the fund for distribution, the sum of $335, being the expense of one-half of the improvements.