Gustav S. Ripka, Virginia DeWitt Fielder and Fielder & Ripka, Inc., a corporation of the State of Delaware,

*vs.*

Thomas M. Gwinn and Caroline Wyatt.

*New Castle, July* 25, 1923.

In suit against alleged agent who by fraud induced complainants to pay considerably more for property than cost to the agent, for cancellation of bond and mortgage and recovery of the excess payment, the bill was not rendered multifarious because also seeking to compel conveyance of part of the property which the agent had fraudulently retained.

A bill is not multifarious because several forms of relief are prayed, where each species of relief is based on one cause of complaint which is common to all and supplies to them all a unity of action.

Where, as alleged, defendant purchased property for complainants, but misrepresented the price, and induced complainants to agree to pay much larger price, bill seeking cancellation of bond and mortgage given for part of price, repayment of money received in excess of the actual cost, damages for nonconveyance of part of the land, and restraining order against payment to defendant of mortgage assigned to him in part payment, was not multifarious.

In suit in which reassignment to complainants of bond and mortgage assigned by them to defendant was part of relief sought, it was not improper to join mortgagor as defendant in order that she might be restrained from paying indebtedness to the principal defendant.

Where complainants, who were defrauded by defendant, through whom they purchased property, conveyed it to a corporation, the corporation was properly joined in suit to cancel bond and mortgage given defendant in part payment, as it was interested in having mortgage cancelled in case the bond was cancelled.

Where parties defrauded by their agent through whom they purchased property gave bond and mortgage to him in part payment, and conveyed the property to corporation organized by them, all of whose stock was owned by them equally, and later by one of them alone, it was properly joined in suit for cancellation of the bond and mortgage and other relief in order that the fraud might be entirely remedied.

Where defendant volunteered his services to complainants in purchase of certain property, and represented to them that this purchase was for their sole benefit, and that they were to pay only as much as he paid, and complainants relied on his experience, honesty and avowed desire to help them, though he received no compensation, and though, so long as agreement remained executory, it may have been unenforceable, when it was executed by conveyance to complainants he was bound by principles applicable to fiduciary relation, and could not keep secret profit for himself.

STATEMENT OF THE CASE.   The amended bill is filed by Gustav S. Ripka and Virginia DeWitt Fielder and Fielder & Ripka, Inc., a corporation of this State, against Thomas M. Gwinn and Caroline Wyatt. It complains that a certain real estate transaction between the individual complainants, Ripka and Fielder, on the one side and the defendant, Gwinn, on the other, was induced by the fraud and misrepresentation of the latter, and seeks to undo the consequences of the fraud thus alleged to have been perpetrated by Gwinn. The facts set forth in the amended bill are as follows:

Some time in the spring of 1919 Gwinn, a resident of the State of West Virginia, who however at the time of the occurences complained of lived at the house of the individual complainants in the City of Wilmington, Delaware, represented to them that he was a large real estate operator owning and developing real estate operations in various states of the United States including Delaware, and that he was a man of large means and was anxious to do something for the complainants that would enable them to make large sums of money in the business of buying, selling and developing real estate in and about the City of Wilmington. In consequence of the influence of Gwinn, Ripka and Fielder became interested in the project of making money out of the development of real estate in said city. Gwinn represented to them that there was a great opportunity to make money in the purchase and development of what was known as the "Thirtieth Street Development," a piece of real estate located in or near the City of Wilmington. Gwinn offered to purchase this piece of real estate for Ripka and Fielder and convey it to them for the price at which he might be able to purchase it without commission or profit of any kind to himself, provided Ripka and Fielder could pay as much as fifteen thousand dollars on account thereof. Gwinn offered to pay the

balance of the purchase price out of his own funds and to take a mortgage from the person to whom it might be conveyed. Ripka and Fielder relied upon the experience, honesty and supposed earnest desire of Gwinn to do them a great favor, accepted his offer and immediately took steps to raise the necessary fifteen thousand dollars. A few days later Gwinn reported to Ripka and Fielder that he had made the purchase for the sum of forty thousand dollars in cash, a price which he represented was much less than the real value, stating that he was ready to carry out his agreement to convey the title to Ripka and Fielder for the sum of forty thousand dollars upon the payment of the said sum of fifteen thousand dollars in cash and the execution to him of a first mortgage on the property in the amount of twenty-five thousand dollars to secure to him the balance of the purchase price. On July 10, 1919, Gwinn made a conveyance of what purported to be all the property in the "Thirtieth Street Development" to one of the complainants, Ripka, at the request of both Ripka and Fielder. The sum of fifteen thousand dollars was paid by the two complainants mentioned to Gwinn between July 11 and August 7, 1919. This sum was paid partly in cash and partly by the assignment of certain bonds and mortgages accepted by Gwinn in lieu of cash. Among said bonds and mortgages was a bond and mortgage given by the defendant Wyatt to Ripka, which is now held by Gwinn and is still due and unpaid. At the time of the conveyance to Ripka on July 10th, he executed to Gwinn a bond and mortgage for twenty-five thousand dollars to secure the balance of the purchase price, upon which the complainants, one or more of them, have since paid sixteen thousand dollars, leaving a balance due thereon of nine thousand dollars. Altogether Gwinn has received to date something more than thirteen thousand dollars in excess of the eighteen thousand dollars which he paid for the property

Subsequent to the said purchase by Ripka and Fielder, they caused to be formed a corporation, Fielder & Ripka, Inc., one of the complainants, to which Ripka and wife conveyed the property described in the deed of July 10, 1919. The entire capital stock in this corporation was issued in equal amounts to the complainants, Ripka and Fielder, and the latter on the second day of June, 1920, purchased from Ripka all of the stock of the corporation thereto-

fore held by him. Fielder thus became the sole owner of the corporation. The amended bill further alleges that Gwinn purchased the property in question from Edward Atwell and Cornelius Mundy, and represented to the complainants, Ripka and Fielder, that in making the purchase he did so for their sole benefit; that they relied upon his experience, judgment, honesty and avowed desire to assist them in making money out of the development of said property, and accepted without question Gwinn's statements to them and therefore believed, at the time of the conveyance to Ripka, that Gwinn had in fact paid the sum of forty thousand dollars for the property, and that in doing so he had acted solely for their benefit. Within the past few months, the complainants allege, they have discovered that Gwinn paid only eighteen thousand dollars for the property instead of the sum of forty thousand dollars as represented. It is further charged that Gwinn, in conveying the property to Ripka, purposely omitted from the description something over ten lots which were properly included in the "Thirtieth Street Development" and to which he had acquired title in the deed from Atwell and Mundy to himself.

The prayers of the bill are that the bond and mortgage given by Ripka on July 10, 1919, be cancelled; that Gwinn be required to re-assign the bond and mortgage executed by the defendant Wyatt and now held by him; that he be decreed to repay all sums of money thus far received by him on account of the purchase price in excess of the sum of eighteen thousand dollars with interest; and that he be decreed to pay to the complainants, or to such of them as may be entitled, the sum of two thousand dollars as damages for the non-conveyance of the ten or more lots mentioned in the bill.

The defendant, Gwinn, has appeared and filed a demurrer. The grounds assigned are that the amended bill fails to state a case entitling the complainants to the relief prayed for; that the amended bill is without equity; that paragraph 22 of the amended bill sets up a cause of action entirely distinct from the main cause of action; and that the agreement in said amended bill mentioned appears to be one for the sale of real property, was not in writing nor was any note or memorandum thereof signed by Gwinn or by

any other person thereunto by him authorized as required by law (statute of frauds).

*Daniel O. Hastings* and *Clarence A. Southerland*, for the complainants.

*James H. Hughes, Jr.*, of the firm of Marvel, Marvel, Layton and Hughes, for the defendant Gwinn.

THE CHANCELLOR. The ground of demurrer to the effect that the requirements of the statute of frauds interpose a bar to the relief prayed for has been abandoned.

This leaves two other causes of demurrer assigned on the record, viz: That the amended bill is without equity, and that it is multifarious in that paragraph 22 presents a cause of action entirely distinct from that set up as the main cause. Paragraph 22 complains that Gwinn in making the conveyance to Ripka purposely omitted from the description some ten or more lots properly belonging to the "Thirtieth Street Development" and included in the description of the premises acquired by him from Atwell and Mundy. The amended bill is not open to the objection of multifariousness because of this paragraph. If the case presented is one properly cognizable in equity, that is to say if the main transaction in which Gwinn is alleged to have defrauded the complainants is such as calls for equitable relief, then the matter of the withholding of the ten or more lots by Gwinn is clearly related thereto in the most intimate way. The case is one where Gwinn is alleged to have perpetrated a fraud and as the fruits thereof to have secured not only money and securities, but as well ten or more lots of land. The former he obtained out of the possession of the complainants; the latter he held back from them. There is no presentation, therefore, by paragraph 22 of a separate, distinct and unrelated subject-matter. Multifariousness being the only objection raised with respect to paragraph 22, this objection is not sustained.

On his brief, the demurring defendant assigns causes of demurrer not specified on the record. Before proceeding to dispose of the cause of demurrer assigned of record that the amended bill is without equity, these causes of demurrer assigned on the brief

will be disposed of. No objection to them as proper to be considered has been made by the complainants, because I suppose they are regarded as properly assigned *ore tenus*. I shall accordingly treat them as necessary to be disposed of.

The first of these causes assigned on the brief may be embraced within the description of multifariousness. It is argued that because the amended bill states a cause of action which contemplates (a) cancellation of a bond and mortgage given by Ripka, (b) repayment of money procured through fraud, (c) damages based on contract and (d) a restraining order against Wyatt and Gwinn against the payment by Wyatt to Gwinn, and the assignment by Gwinn of the mortgage held by him against Wyatt, the amended bill is multifarious. In *Cahall v. Lofland,* 12 *Del. Ch.* 162, 166, 108 *Atl.* 752, the Chancellor said:

"Convenience in the administration of justice is the prime factor in considering whether a bill is multifarious, and even if it be technically objectionable by embracing more than one subject it will be sustained if such procedure is necessary or highly conducive to the administration of justice. 10 *Ruling Case Law,* 429, 430; *Brown v. Tilley,* 25 *R. I.* 579, 583, 57 *Atl.* 380. After all the test is whether justice can be administered between the parties without a multiplicity of suits, and if so, then the objection of multifariousness will not prevail."

It is very clear that the amended bill is not open to the criticism of being multifarious, for all the relief that it seeks is based upon one single ground of complaint, to-wit, that a fraud was perpetrated upon the complainants. The alleged fraud is the source from which flows the claim to the several forms of relief asked. The fact that the source of corrupt dealing spreads itself out in various directions, and, in order for its damage to be repaired, necessitates the application of various corrective measures, is of no consequence. It is just such situations which equity is peculiarly fitted to deal with. The cancellation of Ripka's bond and mortgage, the return of the overpayment beyond eighteen thousand dollars, damages for not conveying the ten or more lots to Ripka, and impounding the Wyatt mortgage so that it may be available for re-assignment, if they are entitled to be decreed in equity, are not improperly asked for in one suit for the plain reason that the one thing upon which they all rest and which gives

to them a unity of action is the alleged fraud which Gwinn is alleged to have perpetrated on Ripka and Fielder. The bill is not multifarious in this particular.

The second of the causes of demurrer assigned on the brief concerns itself with parties. It is contended that the amended bill is guilty of a misjoinder of parties. This is said with respect to the joining of Caroline Wyatt as a party defendant. There is nothing improper in joining her as a defendant. She owes the money due upon the mortgage which Gwinn is alleged to have secured from Ripka by his fraudulent misrepresentation. If this mortgage does in equity belong to Ripka, it having been secured from him by the fraud of Gwinn, it is highly proper that the defendant, Wyatt, be restrained from paying it or interest thereon to Gwinn its legal owner. In this particular the amended bill presents but another illustration of the procedure which equity constantly follows by which equitable assets in the hands of another are arrested so that in case they are finally determined to be the property of the complainant they may be easily available for his acquisition. The defendant Wyatt is not improperly joined.

It is also contended that there is a further misjoinder of parties in that the corporation, Fielder & Ripka, Inc., is made a party complainant. The demurrant urges that the alleged fraud was committed not upon the corporation but upon the individuals Ripka and Fielder, and that such being the case the corporation is in no wise concerned and therefore is not entitled to join as a party to the bill. It appears that the corporation was formed by Ripka and Fielder after the title to the land was acquired by Ripka in behalf of both himself and Fielder and that all the stock of the corporation was divided equally between them. Thereupon the land was conveyed to the corporation. The demurrant insists that, though Ripka and Fielder may have a just ground of complaint against Gwinn for the alleged fraud practiced upon them, yet the corporation whose entity is distinct in contemplation of law from that of its stockholders can in no sense be said to have any ground of complaint cognizable in equity. That the law contemplates the identity of a corporation as entirely distinct from that of its stockholders, is a general rule well accepted. The demurring defendant appeals to this general rule in suport of his argument that the cor-

poration is in no wise interested in the dispute concerning the fraud alleged to have been perpetrated. With respect to this argument the complainants make two replies. The first is that the corporation holds title to the land upon which the twenty-five thousand dollar mortgage alleged to have been fraudulently obtained is a lien, and such being the case it is clearly a party interested in the subject-matter of the controversy, for, if the bond and mortgage were fraudulently obtained and because of the fraud ought to be cancelled, the corporation whose land is encumbered by the lien of the mortgage is manifestly very considerably interested in the relief sought. The mortgage was given by Ripka and was, I assume, in the usual form, that is to say, was given to secure the payment of the principal debt evidenced by the bond. If the bond of Ripka should be cancelled, the corporation whose land is subject to the mortgage lien given to secure the bond's payment ought to be permitted to join in the suit in order to litigate its right to have the mortgage satisfied along with the cancellation of the bond which it secured. In the recent case of *Wright v. Scotton*, 13 *Del. Ch.* 402, 121 *Atl.* 69, the Supreme Court of this State said:

"A court of equity may adapt its relief to the particular rights and liabilities of each party and determine the interests of all, so far as they are legitimately connected with the subject matter and properly within the scope of the adjudication."

The right of the corporation to litigate its contention that if the bond is cancelled the mortgage ought also to be destroyed is so intimately related to the matter in controversy that it cannot be said that to allow it to litigate its rights is to admit a party to the cause which is in no wise interested therein.

The complainants, in further reply to the contention of the demurrant that the corporation is not a proper party, insist that the fact that the entire stock of the corporation was originally owned by the victims of the fraud and is now owned entirely by one of them is sufficient to permit the joining of the corporation. This proceeds on the theory that, where the doctrine of distinct corporate entity is appealed to as a shield and protection to fraud, equity will disregard the theory and, looking only to the substance, will regard the corporation as in fact having the identity

of the individuals who own its stock and administer relief in accordance with this conception.

It is manifest that when Ripka took title in his own name, Fielder being jointly interested with him, the device of the corporation was resorted to as a convenient method for the title to be carried in behalf of both of the purchasers. Ripka and Fielder each having an interest in an undivided moiety, Ripka conveyed the whole interest to the corporation and its entire stock was issued in equal shares to Ripka and Fielder. The consequence of this was that the equal shares of each in the property, instead of being held by each as a tenant in common, was now assured to each through an equal ownership of the corporate stock of a holding company. This being the true stiuation, the complainants contend that, notwithstanding the doctrine of distinct corporate entity, equity will for the present purpose regard the corporation as but another name for the individuals, Ripka and Fielder, and will consequently regard the corporation as a proper party to the cause, which seeks to redress the wrong done immediately to the individuals and mediately to itself. I am of opinion that this contention is sound so far at least as the mortgage lien is concerned. It would appear to be a culpably perverse devotion to theory and legal fiction for equity to hold that if a person acquires title to land in such way as to take it impressed with a lien obtained by a fraud perpetrated upon him in the act of acquisition, and then in ignorance of the fraud conveys it to a corporation entirely owned by himself for the more convenient holding of the title subject of course to the fraudulent lien, the corporation cannot be heard to complain but must undergo the hardship of having the lien permanently fastened to its assets. In that case the defrauded person, who though not the legal owner of the asset is nevertheless regarded in equity as beneficially interested therein, would find himself balked of redress and the wrongdoer secure in the enjoyment of his corrupt advantage. If this were held to be the law, then equity, whose boast it is that fraud shall never be allowed to so immure itself as to escape its corrective power, would confess itself unable to surmount the obstacle of a mere fiction. While no case is cited to me which presents facts similar to this, yet the following cases announce principles which are applicable in sustaining the con-

tention of the complainants. *Given v. Times-Republican Printing Co., et al.*, 114 *Fed.* 92, 52 *C. C. A.* 40; *Aurora Daily News Co., et al., v. Frazier*, 157 *Ill. App.* 456; *Barnes v. Smith*, 48 *Mont.* 309, 137 *Pac.* 541; *Carrigues v. International Agricultural Corp.*, 159 *App. Div.* 877, 144 *N. Y. Supp.* 982. In our own State in a partition cause in the Orphans' Court, where that court exercises general equity powers and frames its orders and decrees according as the right or justice of the cause may demand (*Revised Code* 1915, § 3301), the court, though no question of fraud was involved, carried the principle that the doctrine of corporate entity must give way in favor of the just rights of the owning stockholder to an even greater length than I am required to carry it here. *Warner, et al., v. Logue Realty Co.*, 11 *Del. Ch.* 474, 107 *Atl.* 449.

In view of the foregoing, the conclusion is that the corporation is properly joined as a party complainant.

It remains to consider the first ground of demurrer assigned on the record, viz., that the amended bill is without equity. The argument advanced in support of this is that Gwinn owed no duty to Ripka and Fielder, that the transaction was in substance one of sale by Gwinn and that what the property cost Gwinn is of no moment. I do not look upon the transaction as one between vendor and vendee. Though in point of form it took the shape of a sale of real estate by Gwinn to Ripka, yet in view of the allegations of the bill such was not in truth the real nature of the transaction. The solicitor for Gwinn argues that it must be regarded as a straight transaction between vendor and vendee, for there is no relation of trustee and *cestui que trust* between Gwinn on the one side and Ripka and Fielder on the other, nor was there any relationship of principal and agent. Therefore, he argues, there was no duty which Gwinn owed to Ripka and Fielder to convey the property at what it cost. I cannot accept this argument. There was an agency voluntarily assumed by Gwinn. It may be, as contended by the solicitor for the defendant, that this agency was without consideration and that Gwinn was, therefore, under no obligation to proceed with the matter. If for instance Gwinn had after acquiring the property refused to make the transfer to Ripka and Fielder, it may be conceded as contended for by the defendant, that the latter could not have been held liable for the

Ripka, et al., vs. Gwinn, et al. 111

Opinion.

breach. Such appears to have been the situation in *Walton v. Dore*, 113 *Iowa*, 1, 84 *N. W.* 928, a case relied upon by the defendant as strongly in point. If the proposition which the Iowa case supports be conceded, it is of no assistance here for the reason that the amended bill presents an entirely different state of facts. It charges that Gwinn volunteered his services, that Ripka and Fielder accepted them, relying upon his experience, honesty and avowed desire to help them make a profitable investment; that Gwinn made the purchase, represented to them that it was for their sole benefit and that they were to pay only as much for the property as he had paid. He told them that the sum was forty thousand dollars. They accepted his statement and acted in accordance therewith. Even though Gwinn's alleged agency so long as it remained executory may not have been legally existent, yet when it was acted upon and became executed his conduct must in equity be required to square itself with the principles applicable to the fiduciary relation of principal and agent. 1 *Mechem on Agency*, (2d Ed.) § 1223; *C. J.* 433, 722. He cannot offer himself as agent for others, be accepted by them as such, and then proceed with impunity to abuse the confidence reposed in him by cheating and defrauding those whose trust he had invited, on the plea that he was acting voluntarily without compensation. *Hunsaker v. Sturgis*, 29 *Cal.* 142; *Salsbury v. Ware*, 183 *Ill.* 505, 56 *N. E.* 149; *Green's Adm'r. v. Bryant*, 2 *Ga.* 66. Even where there is no fiduciary relation between the parties it has been held that, if one agrees to sell at cost, he is liable if by reason of false representation he obtains more than cost. *Gassett v. Glazier*, 165 *Mass.* 473, 43 *N. E.* 193; *Kohl v. Taylor*, 62 *Wash.* 678, 114 *Pac.* 874, 35 *L. R. A.* (*N. S.*) 174; *Barnard v. Coldwell*, 39 *Mich.* 215; *Pendergast v. Reed*, 29 *Md.* 398, 96 *Am. Dec.* 539. See, also, *Lord v. French*, 61 *Me.* 420.

Taking all the allegations of the amended bill as true, the complainants are entitled to some relief. The demurrer is to the whole bill and for the reasons above indicated will be overruled.