WILLIAM H. KELLY, Commissioner of Banking and Insurance of the State of New Jersey, and PUBLIC INDEMNITY COMPANY, a corporation, by William H. Kelly, Commissioner of Banking and Insurance of the State of New Jersey,

*vs.*

INTERNATIONAL RE-INSURANCE CORPORATION, a corporation of the State of Delaware, GEORGE DE B. KEIM, ARTHUR G. LOGAN and CHARLES S. WESLEY, Receivers of International Re-Insurance Corporation.

*New Castle, June 13, 1934.*

*Charles F. Curley,* for complainants.

*John Biggs, Jr.,* of the firm of Biggs, Biggs & Lynch, and *Ayres J. Stockly,* of the firm of Hastings, Stockly & Duffy, for defendants.

THE CHANCELLOR: There are seventeen grounds of demurrer. Some of them are duplications in substance though not in form. The points raised by the demurrer are indicated in what follows.

1. It is objected that William H. Kelly, Commissioner of Banking and Insurance of the State of New Jersey, is an improper party to the cause. He was not a party to the contract. Public became insolvent and the commissioner took possession of its property and business in accordance with the statutory authority conferred upon him. The New Jersey statute (*N. J. St. Annual* 1931, § 99—56) is pleaded. It authorizes the commissioner, when he has taken possession of the property and business of an insurance company incorporated under the New Jersey law, to do "such other acts as are necessary to conserve its assets and business," and to liquidate its affairs; and, to that end, he "is empowered and authorized, in the name of such company, to demand, sue for, collect, receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action," etc., of said company. This language is broad enough to enable him to maintain the pending bill. But the statute does not confer title upon him to the company's assets and choses in action. When he sues he must do so in the name of the company. The statute so provides. In his individual official capacity he has no right to sue. The objection to him as a party in that capacity is therefore well taken. But Public by the commissioner is a competent

party and therefore the bill should not be dismissed because of the objectional presence of the commissioner in his individual official capacity.

2. Paragraph 5 of the bill is objected to as containing allegations that are immaterial. The paragraph alleges that the Department of Insurance and Banking of New Jersey examined into the affairs of Public and, for the protection of its creditors and stockholders, participated in the negotiations leading to the execution of the contract. The contract shows no endorsement of approval by the Department, and of course the Department is in no sense a party to it. The bill does not allege that the Department was the agent of Public to negotiate the contract. Under the circumstances shown, it is not perceived how the fact that the Department participated in the negotiations can be of any material significance. The demurrer to paragraph five will therefore be sustained.

3. Paragraph six is demurred to on the ground that its allegations are surplusage and immaterial. The paragraph alleges that in the course of the negotiations, International represented to "Public Indemnity Company and to the Department of Banking and Insurance that under the proposed contract a fiduciary relationship would exist between the two companies; that defendant International Re-Insurance Corporation would, in the liquidation of the assets to be transferred by Public Indemnity Company and the payment of its liabilities serve in the capacity of a trustee; and that the assets to be transferred by Public Indemnity Company would be used by International Re-Insurance Corporation only for the satisfaction of liabilities of Public Indemnity Company."

The representations alleged in the paragraph are among those alleged to have been false and to have induced Public to enter into the contract. Since the New Jersey Department of Banking and Insurance is nowhere alleged, as before indicated, to have acted as the agent of Public in the procuring of the contract, and is not a party to it, the

fact that representations were made to it is of no material moment.

But the representations set forth in paragraph six are also alleged to have been made to Public. It is contended that even so, the paragraph is open to objection because the representations are not of any past or present fact or state of facts, but solely prospective and promissory in nature, and that, therefore, they are not such representations, even though false, as would justify recission.

In answer to this objection the solicitor for the complainants contends that the representations are such as fall in the category of representations of a present intention entertained by International. Cases are cited to support the proposition that a representation of a present intention is such a representation of an existing fact as will satisfy the law of rescission, if it be false at the time it was made. It is not deemed necessary to examine that proposition in the instant case. This is for the following reasons: (a) The allegations are so phrased in paragraph six that they do not amount to a clear asseveration of intention on the part of International. They may be construed as saying that under the proposed contract such and such would be the result. In other words, the alleged representations were in the nature of a construction of the contract. If the phrasing of the allegations was meant to express the fact that International by its representations meant to express its then existing intention, the language employed is not sufficiently definite to express the meaning clearly. (b) The contract is attached to the bill, and if it does not mean what International is represented as having said it would mean, Public must be taken to have been competent to discover International's error in the construction of it. It cannot be that a party's statement of what he understands a document to mean which he and another jointly execute, can be regarded as a representation of a fact for purposes of rescission. (c) And finally, a reading of the contract shows that the contract meant substantially what International is

represented as having said it would mean. Under the contract, International undoubtedly stood in a fiduciary relationship to Public; it was to act not strictly as a trustee, but certainly in the capacity of a trustee; and it was bound to use Public's assets only to the extent necessary for the satisfaction of its liabilities, all the excess above the amount necessary for that purpose, after deducting agreed items, going back to Public. The contract therefore was not given a false construction by International's representations of its meaning.

4. The objection urged under this head has already been covered. It is that representations alleged to have been made to the Department of Banking and Insurance of New Jersey are immaterial. For reasons already stated, the objection is well taken.

5. The contract was negotiated in behalf of International by Carl M. Hansen, its president. Paragraph eight of the bill alleges that in the course of the negotiations Hansen submitted to Public a financial statement of International as of September 30, 1932, and represented that the same reflected accurately the condition of International as of that date and that any changes since the statement were by way of improvement. Later in the bill the financial statement is alleged to have been wholly false and fraudulent, and that Public was induced thereby to enter into the contract.

It is objected by the demurrant that Hansen's authority to act in behalf of International is not alleged to have been authorized by the directors of International. It is of course true that the directors of a corporation are its managing body. But formal authorization from the directors to an officer of the corporation to act for it is not necessary in every instance of corporate activity. Here the contract was entered into by the two companies and performance by Public was fully completed by the due transfer of its assets to International. International took possession of the assets of Public, continues to hold them in their original or con-

verted form according to the bill, and it is now suggested that the contract under which they are held is no contract because Hansen who negotiated it is not shown to have been authorized by the directors to negotiate it. How the defendants can affirm the contract by retaining its fruits and at the same time question its validity, it is impossible to see. Whether Hansen was authorized by his directors to negotiate the contract or not is wholly immaterial. If the directors did not authorize the contract, what do the defendants conceive the result to be? Is it that Public's assets and their proceeds are entirely lost to it? That is what the argument under the present head would seem to indicate as their view. Such a result is so shocking to every sense of justice as to merit no further discussion.

6. It is next urged that since International was to act under the contract without profit, the allegedly false representations of its financial strength are immaterial. This amounts to saying that if one undertakes a gratuitous service for another, his generosity excuses his fraud in securing the gratuitous commission. Acting as an uncompensated agent of another does not confer a license upon the agent to cheat his principal. *Ripka, et al., v. Gwinn, et al.,* 14 *Del. Ch.* 101, 122 *A.* 137; *Allen v. Adams,* 16 *Del. Ch.* 77, 140 *A.* 694. One is not relieved from the obligations of morality by the circumstance that he is unpaid for his voluntarily assumed obligations. If he acquires the property of another as agent by fraudulent representations, it is beyond all reason to say that the principal must remain wedded to the agency relationship simply because the agent is to receive no compensation.

But it does not appear from the bill that International undertook to act without profit. In taking over Public's assets for liquidation, it doubtless derived profit in an indirect way at least from an increase in its own insurance business, because it probably succeeded to Public as the insurer of the latter's existing policy holders.

7. The demurrer attacks paragraph nine of the bill.

The paragraph is subject to objection for reasons noticed under 2, 3 and 4 *supra*. Such other paragraphs in the bill in which allegations are made concerning the part played by the Commissioner of Banking and Insurance in the negotiation of the contract, are for the same reasons objectionable.

8. The bill alleges in paragraph eleven that the representations which are referred to therein as inducements to Public's entering into the contract, were "wholly false and fraudulent" and particularly that "the financial statements submitted by said corporation (International) were false and fraudulent." It is objected that these allegations are not allegations of fact, that they are mere conclusions of law. The objection is not well taken. If the demurrer complained against the generality of the allegation that the financial statements were false, there might be merit in the contention. The complainant might be required to particularize the items of falsity in the statements. It is not necessary, however, to pass on those matters, for the demurrer does not raise the question of particularity.

9. A further ground of demurrer is to the effect that the bill makes no tender of restoration to International of the rights received from it by Public. It is a sufficient answer to this objection to point out that Public received no property of any sort from International. All that it derived from the contract was a right to exact of International that it be bound by the contract's obligations. If the relief of rescission is granted, International will be relieved of the obligation which is the complement of the right which Public received. The case is not one calling for consideration of the principles which govern restoration and its tender.

10. Since the two corporations are in receivership, it is contended that there has ensued such a change of position or circumstances that it would be inequitable, creditors' rights having intervened, to decree a rescission. I cannot accede to that proposition. The fact of receivership cannot

destroy the right of a party to a contract whose consent was induced by fraud, to his equitable remedy of rescission, if the right thereto is adequately shown and the remedy is capable of practical application. The fraud entitles the victim to regard the contract as a nullity and a court of equity will treat the transaction as though it had never taken place. The receivers, therefore, if the allegations of the bill be true, hold property either in its original or converted form which Public is entitled to regard as its own and to have restored to it. The appointment of receivers for International does not introduce the presence of *bona fide* purchasers for. value whose rights can prevail over those of Public.

11. Under this head of the demurrer the defendants argue that the officers of Public were qualified to judge of the truth of the alleged false representations, that the sources of information were open to them, and that, so far as the bill shows, they failed to exercise reasonable care and prudence in ascertaining the correctness of the representations made by International. It follows, it is said, that Public can have no right to complain. Though there may be cases in which, because of the simplicity and patency of .the facts to which a party's representations refer, it might be said that the representations though false could not have been relied upon, the present is not such a case. A financial statement supplied by one party to the other never displays its own falsity. It is with exceedingly poor grace that one who has furnished what he states is a true financial statement of a business, says to him to whom it was furnished—"I told you it was true, but you should not have accepted and acted on my statement as an honest one. You should have investigated for yourself to see if I was deceiving you." There was no duty on Public to check the truth of International's financial statement. If International presented it as an inducing representation, Public was entitled to receive it as such. In *Omar Oil & Gas Co. v. Mackenzie Oil Co.*, 33 *Del.* (3 *W. W. Harr.*) 259, 138 *A.* 392,

393, decided by the Supreme Court, it was held that even though the plaintiff corporation had made some investigation of the facts represented to it by the defendant, yet if such investigation was not so complete or thorough as to conclusively show that the plaintiff relied solely on the investigation and not on the alleged representations, the plaintiff was not precluded from relying on the representations. That case more than answers the present ground of demurrer, for here Public did not undertake to make any investigation whatever, not to speak of an incomplete one.

The demurrer will be sustained in part and overruled in part, as indicated in the foregoing. Order accordingly.