DICK R. McLAIN and GEORGE R. METCALF,

*vs.*

LANOVA CORPORATION, a corporation of the State of Delaware, WILLIAM MERTENS, JR., DANIEL J. RIESNER, HANS FISCHER and WILLIAM S. MURRAY, JR.

*New Castle, October 4, 1944.*

*Charles F. Richards,* of the firm of Richards, Layton & Finger, and *Jeremiah M. Evarts* and *Dennis B. Sullivan,* both of New York City, for petitioners.

*Hugh M. Morris* and *Edwin D. Steel, Jr.,* of the firm of Morris, Steel & Nichols, for defendants.

HARRINGTON, Chancellor: The question is whether the defendants, William Mertens, Jr., Daniel J. Riesner, Hans Fischer and William S. Murray, Jr., were legally elected directors of the Lanova Corporation at the annual stockholders' meeting, held March 21st, 1944. They were candidates for these offices on the so-called management ticket, and were duly declared elected by a plurality of all the

votes cast at that meeting. But the petitioners claim that numerous votes cast by proxies were illegally rejected, and that Henry Flood, Jr., Frank Woodman, Ervin L. Hall and Alanson Wilson, who were voted for on the so-called opposition ticket, were legally elected directors; and they seek a decree accordingly.

The corporate by-laws provide for the election of five directors, and both the petitioners and the defendants concede that all the votes cast at that meeting for the fifth director were for Robert J. Fellner, and that he was declared elected.

*Section* 31 *of the General Corporation Law, Rev. Code* 1935, § 2063, in part, provides:

"Upon the application by any stockholders, the Chancellor shall have power to hear and determine the validity of any election of any director or officer of any corporation organized under this Chapter and the right of any person to hold such office, and in case any such office is claimed by more than one person may determine the person entitled thereto; and to that end make such order or decree in any such case as may be just and proper, * * *."

The defendants' motion to dismiss the petition is denied.

The Lanova Corporation issued but one class of stock, and, on March 21st, 1944, 228,220 shares were outstanding.

The petitioners, Dick R. McLain and George R. Metcalf, among other things, allege that they are the respective owners and holders of 600 shares and 2000 shares of that stock, which are registered on the books of the corporation in their several names, and were so registered on March 21st, 1944.

The defendants' answer merely denies that the petitioners are the beneficial owners of that stock. They, therefore, concede that McLain and Metcalf are the record holders. Moreover, at the hearing their alleged stock ownership was proved by the corporate records. No other pri-

mary proof by the petitioners is necessary to sustain their right to maintain this proceeding. *In re Universal Pictures, ante p.* 72, 37 *A.* 2d 615, 622; *In re Northeastern Water Co., ante p.* 139, 38 *A.* 2d 918; *In re Giant Portland Cement Co.,* 26 *Del. Ch.* 32, 21 *A.* 2d 697. The cases cited by the defendants (*Hunter v. McCarthy, ante p.* 27, 36 *A.* 2d 261; *Schenck v. Salt Dome Oil Corp., ante p.* 54, 37 *A.* 2d 64; *Chadwick v. Parkhill Corp.,* 16 *Del. Ch.* 105, 141 *A.* 823) are not inconsistent with this conclusion.

*Section* 17 *of the General Corporation Law* (§ 2049 *Rev. Code* 1935) provides:

"Unless otherwise provided in the Certificate of Incorporation, each stockholder, shall at every meeting of the stockholders be entitled to one vote in person or by proxy for each share of the capital stock held by each stockholder, * * *."

Moreover, the by-laws of the corporation (par. 7) provide that at any meeting of the stockholders

"* * *every stockholder having the right to vote shall be entitled to vote in person, or by proxy appointed by an instrument in writing subscribed by each stockholder * * *. Each stockholder shall have one vote for each share of stock having voting power, registered in his name on the books of the corporation, * * *."

*Section* 17 gives the board of directors power to fix a record date for the purpose of determining what stockholders may vote at a stockholders' meeting. It also provides that "only such stockholders as shall be stockholders of record on the date so fixed shall be entitled to such notice of and to vote at such meeting. * * *."

*Section* 29 *of the General Corporation Law* (§ 2061 *Rev. Code* 1935) provides that prior to an election of directors a corporation must prepare an alphabetical list of its stockholders entitled to vote which shall be open for inspection at the meeting.

It also provides:

"The original or duplicate stock ledger shall be the only evidence as to whom are the stockholders entitled to examine such list or the books of the corporation, or to vote in person or by proxy at such election."

The stock transfer books of Lanova Corporation were closed March 4th, 1944, but 200,313 shares were represented at the stockholders' meeting of March 21st. Through inadvertence, and other reasons, a considerable number of these shares were not voted. It is also conceded that numerous votes cast on other shares were legally rejected. Most of the votes were cast by proxies; and by unquestioned proxies given to Metens, Fischer and Fellner, 86,872 shares were voted for the management ticket. A considerably larger vote was cast for the opposition ticket, but, pursuant to the direction of the presiding officer at the meeting, the tellers rejected 37,496 of these votes, cast on proxies purporting to have been given by partnership record owners. It is conceded that the validity of that action is the conclusive question in determining whether the so-called opposition ticket received a plurality of all the votes cast. These votes were rejected because it did not appear that the persons who signed the partnership names to the proxies were authorized to do so. That reason is not sufficient.

As a general rule, when corporate stock is recorded in the name of a partnership, and a proxy purporting to be signed in the partnership name is sent out by the stockholder, it is *prima facie* evidence that the signature thereto was authorized. *Gow v. Consolidated Coppermines Corp.,* 19 *Del. Ch.* 172, 165 *A.* 136; *Atterbury v. Consolidated Coppermines Corp.,* 26 *Del. Ch.* 1, 20 *A.* 2d 743. The validity of the proxy is essentially a question of evidence, but the efficient conduct of elections at corporate meetings seems to require the application of that rule. *Id.*

The partnership record holders casting the 37,496 re-

jected votes, were New York brokerage houses, having no real beneficial interest in the stock, and it is now contended that no mere record holder could vote stock without the direction of the real owner. But whatever the rules of the New York Stock Exchange may be, that is not the rule in this State. *In re Giant Portland Cement Co., supra; Atterbury v. Consolidated Coppermines Corp., supra.*

The right to vote shares of stock having voting powers is ordinarily an incident of its legal ownership, and in the absence of some peculiar inequitable circumstances affecting the rights of the real beneficial owner, the record owner can vote the stock. The beneficial owner must be taken to know this, and can protect his rights by demanding a proxy, or otherwise. *Id.*

Applying these principles, the 37,496 partnership votes that were cast at the meeting for the opposition ticket, but rejected, must be counted, and, having received a plurality of all the votes cast, that ticket was elected. Many of these votes were cast pursuant to the direction of the real beneficial owners, and while measured by the rules of evidence, the proof did not show that 18;293 of them were so authorized; that is unimportant. Notwithstanding the result of the vote, the individual defendants, who were candidates for re-election on the management ticket, claim that a new election should be ordered. Their contention is based on the alleged unfair and inequitable conduct of Fellner, and on the theory that the group of stockholders with whom he had counseled and collaborated in defeating the management ticket, should not be permitted to profit thereby.

Prior to the stockholders' meeting of March 21st, 1944, Fellner was a member of the board of directors of the Lanova Corporation and a member of its executive committee. He was also a director of Diesel Securities, Inc., which owned and held 50,000 shares of Lanova Corporation stock, and on or about March 7th, 1944, agreed that the

holding corporation should execute a proxy to be voted in favor of the corporate management at the March meeting of the stockholders. He signed the minutes to that effect on March 10th. He was made a member of the Lanova Corporation management proxy committee, was so notified about March 6th, 1944, and consented to act in that capacity. It seems that he had requested that appointment some months before. Mertens and Fischer were the other members of that committee, and largely because of their solicitation, about 150 stockholders sent in proxies, unrestricted in form, authorizing Mertens, Fischer and Fellner, and each of them, to vote their stock "for the election of directors of the corporation." For some time prior to March 6th, Fellner had known that the re-election of the old board would be opposed at the stockholders' meeting and that proxies were being solicited for that purpose. The evidence indicates that he had consulted with some of the opposing groups and their attorneys from time to time to that end. He helped organize one of them and as early as January, 1944, selected its attorney. Some of the proxies printed by the opposition were delivered to Fellner by the printer in the latter part of February. He seems to have had close business and personal relations with Mertens, but did not inform him of the opposition to the re-election of the old board until March 10th, or eleven days before the stockholders' meeting. On that date, when questioned by Mertens, he admitted that he had known about the opposition movement for three or four weeks and that his help had been solicited, but said he intended to remain neutral. The proxies printed by the management, in which he had been named one of the voting agents, had been sent out to the stockholders the day before. In November of 1943, Fellner had showed Mertens a letter from a stockholder objecting to his re-election as president of the corporation, but evidently that made no impression on him as the same stockholder had taken a like position prior to the preceding annual

stockholders' meeting, but finally gave his proxy to the management. The main objection to Mertens' re-election was because he had other exacting employment which required a large part of his time. Mertens and Fischer were unable to send out their letters soliciting proxies for the management ticket until March 14th. After numerous votes cast for the opposition ticket had been rejected at the meeting, Fellner refused to participate in voting the stock represented by the management proxies, and also refused to vote his 180 shares. He was nominated for the office of director on both tickets; at first, he declined the nomination on the management ticket, but later accepted it.

It is conceded that when the unrestricted proxies given the management committee, are read with the letters sent to the stockholders by Mertens and Fischer, the fair inference is that they were intended to be voted for the re-election of the old board; and they were voted for the management ticket, though Murray and Riesner were substituted for Flood and Woodman on the ticket nominated. While Fellner did not participate in voting the stock, authorized by the proxies, it was voted by Mertens and Fischer who had equal rights with him; at the most, he merely refused to participate in the exercise of the rights and powers so delegated.

Admitting that the holder of a proxy is an agent, and within the scope of his authority, has a certain fiduciary relation toward his principal (*Triplex Shoe Co., et al., v. Rice & Hutchins,* 17 *Del. Ch.* 356, 152 *A.* 342, 72 *A. L. R.* 932; *Allen v. Adams,* 16 *Del. Ch.* 77, 140 *A.* 694; 5 *Fletcher Cyc. Corp.,* (*Perm. Ed.*) 181; 2 *Amer. Jur.* "*Agency*," 203), it is difficult to see how a new election can be ordered.

Fellner did not abuse the power delegated to him by any stockholder (see *Triplex Shoe Co., et al., v. Rice & Hutchins, supra;* 5 *Fletcher, supra*) and if he owed any other duties to his principals they are not claiming that

184

he was an unfaithful agent. Moreover, he owed no legal duty to the defeated management group. Compare *In re Giant Portland Cement Co., supra; In re Canal Const. Co.,* 21 *Del. Ch.* 155, 182 *A.* 545. Perhaps there is some basis for the claim that in some respects Fellner's conduct toward that group can hardly be squared with the rules of ethics but that is not enough. Robert J. Fellner, Henry Flood, Jr., Frank Woodman, Ervin L. Hall and Alanson Wilson are therefore the duly elected directors of the corporation.

A decree will be entered accordingly.