MILDRED E. WILKES, an infant, by her next friend, Albert Wilkes, Plaintiff, v. JOSEPH V. MELICE, JOHN PONTINO, ROCCO PONTINO, and LAURETTA JEÁN TABER, Defendants.

(*November* 2, 1953.)

LAYTON, J., sitting.

*David F. Anderson* (of Berl, Potter and Anderson) for Plaintiff.

*Joseph H. Flanzer* for Defendant, Lauretta Jean Taber.

Superior Court for New Castle County, No. 542, Civil Action, 1953.

LAYTON, J.:

On June 9, 1952, defendant Taber's automobile, proceeding north on Route 202 in this State, collided with a tractor

trailer being operated in a southerly direction by defendant Melice. Defendants Pontino were the owners of the truck. Plaintiff was a passenger in defendant Taber's machine and has sued all four of the named defendants for injuries sustained in the accident. The defendant Taber has filed a motion for summary judgment upon the ground that plaintiff was a guest within the meaning of Title 21, § 6101, 1953 *Del. Code*[1] and is not entitled to recover against her. It is conceded that Taber is not being charged with "wilful" or "wanton" negligence which under another portion of the guest statute would entitle plaintiff to maintain an action for injuries.

From the affidavits filed by the parties, it appears that Mrs. Taber and Miss Wilkes lived in neighboring towns near Albany, N. Y., and that the former's husband and the latter's fiance were in the Armed Forces stationed at Aberdeen, Md.; that Mrs. Taber was in the habit of driving to Aberdeen each week-end to see her husband and that on May 16, Miss Wilkes, then a stranger, called Mrs. Taber and asked if she would take her and her fiance's sister, Miss Bouchard, to Aberdeen and back that week-end, to which she agreed.[2] From that point on, the affidavits diverge sharply. Mrs. Taber went on to relate that she drove plaintiff and Miss Bouchard to Aberdeen as requested, refusing repeated offers on their part to pay for gas. Finally, her affidavit states, at the end of the trip, she reluctantly agreed to let the two girls pay her $10 as their share for gasoline and oil, but there was no agreement or offer to pay for any future trip; that prior to June 6, she, Mrs. Taber, called Miss Wilkes and offered to take her on the same trip the coming week-end[3] as her guest and that Miss Wilkes accepted, stating she was very glad not to have to pay for she could not afford it.

---

[1]"No person transported by the owner * * * of a mortor vehicle, * * * as his guest without payment for such transportation shall have a cause of action for damages * * *."

[2]Her fiance had written her telling her to call Mrs. Taber.

[3]This was the week-end of the accident.

Miss Wilkes' version is altogether different. As to the May 16th trip, she relates that when she and Miss Bouchard offered to pay for gas, Mrs. Taber refused and stated she would keep an account and render it at the end of the trip at which time she said that the cost of the oil and gasoline was $15, whereupon each of the passengers paid her $5; that "* * * before departing, the parties discussed the next trip they would make in the near future and agreed to follow the same arrangements about sharing the expenses on that trip."

Plaintiff moves to dismiss defendant's motion first upon the ground that, the affidavits being in conflict upon a material issue, defendant's motion cannot succeed. Rule 56(c) of the Civil Rules of the Superior Court, *Del. C. Ann.* Defendant, while conceding the conflict, denies its materiality. She takes the position that the weight of authority is to the effect that the mere sharing of the expense of gasoline for a trip made for pleasure or social reasons does not "* * * transform into a passenger one who without such exchange would be a guest * * *." *Druzanich v. Criley, Cal. App.*, 107 *P.* 2d 445, 447. Admittedly, there are a number of cases which follow this general reasoning, but upon closer examination, it frequently appears that the payment was gratuitous, that is to say, not resulting from a firm undertaking made in advance but, rather, from the acknowledgment of a social obligation. *Ernest v. Bellville*, 53 *Ohio App.* 110, 4 *N. E.* 2d 286.

According to the very exhaustive note on this subject in 10 *A. L. R.* 2d 1352, 1373,

"Where the agreement that the occupant should contribute to the cost of operating the car was entered into before the start of the trip, or so as to make him legally obligated for such contribution, * * * it has generally been held, under the 'payment' statutes, that the occupant is entitled to the ordinary care owed to a passenger for hire."

The many cases cited fully support the statement of the legal principle just quoted. *Kerstetter v. Elfman*, 327 *Pa.* 17, 192 *A.*

663 (but applying the Delaware Statute), while not binding, is entitled to marked consideration. I accept the result reached by the Pennsylvania Supreme Court as the weight of authority.

In the case before me, I must take plaintiff's affdavit in its most favorable light. *Engle v. Poland,* 8 *Terry* 365, 91 *A.* 2d 326. Thus viewed, a jury could well conclude that the plaintiff had entered into an enforceable agreement that, in consideration of being driven by this defendant to Aberdeen, Md., and back, she would pay ratably the expenses of the trip. I do believe, however, that the agreement to share expenses must be bona fide in the sense that it should represent a consideration of some substance. Otherwise, the sound reasons motivating the passage of our guest law would be subverted. Thus, had plaintiff agreed to pay 50 cents for her round trip, I should have grave doubt of its legal sufficiency under the Statute. But, here, I do not think it can be said as a matter of law that the sum of $5 (if three passengers accompanied the defendant, or $7.50, if plaintiff went alone with Mrs. Taber), would not constitute payment under the Statute. Payment may take many forms. It may be in cash prior to the trip or by an enforceable agreement to pay cash at the end of the trip, or it may represent some benefit to the defendant driver such as appeared in *Elliott v. Camper,* 1937, 8 *W. W. Harr.* 504, 194 *A.* 130.

It is my conclusion that the conflict in the affidavits before me is not on an immaterial basis but rather goes to the very heart of the case. Accordingly, defendant's motion for summary judgment is denied.