HENRY ASMUTH, Plaintiff, v. FRANKLIN KEMPER, Defendant.

(*July* 6, 1961.)

CHRISTIE, J., sitting.

*Vincent A. Theisen* and *Victor F. Battaglia* (of Theisen and Lank) and *Herman C. Brown* for the plaintiff.

*F. Alton Tybout* (of Prickett, Prickett and Tybout) for the defendant.

Superior Court for Kent County, No. 245, C. A., 1959.

CHRISTIE, J.:

The plaintiff, Henry Asmuth filed an action against Franklin Kemper alleging that he was injured while riding in an automobile driven by Kemper. In the first claim for relief he alleges that Kemper drove with willful or wanton disregard of the rights of others; in the second claim he alleges that Kemper drove negligently. Asmuth's and Kemper's depositions have been taken and affidavits by Kemper and his wife, Shirley Kemper, have been taken.

The defendant moved for summary judgment on the ground that there is no dispute as to any material fact and that on the facts the defendant is entitled to judgment as a matter of law.

Asmuth met Kemper for the first time on the night of the accident. The meeting was suggested to Asmuth by Kemper's sister, Mrs. Louise Robinson, on the day before the accident. Asmuth and Mrs. Robinson had been keeping company and had decided about two weeks previously to go to the V.F.W. dinner on November 9th. They had agreed that Mrs. Robinson would drive but something went wrong with her car. At her suggestion the Kempers were invited. There was no plan to do anything except go to the V.F.W. dinner. Mrs. Robinson, Asmuth and the V.F.W. were all in Milford. The Kempers live in Ellendale, seven or eight miles from Milford. The Kempers came to Milford in their car, which was used during the balance of the evening.

The Kempers and Mrs. Robinson met Asmuth in his apartment about 7:30 or 8:00 and each had a highball of about one ounce of whiskey. They stayed in Asmuth's apartment for about 30 or 45 minutes. Asmuth bought the tickets for the dinner. So far as Kemper knew, his sister was providing the tickets. She wanted the Kempers to meet Asmuth.

Asmuth bought the tickets for himself and Mrs. Robinson about one week before the dinner. Kemper's tickets were bought when they went to the dinner. Asmuth did not tell Kemper that he, Asmuth, was paying for the tickets. Asmuth did not at any time pay Kemper for the use of his car. At the dinner, Asmuth and Kemper had two or three glasses of beer.

They left the V.F.W. hall because Mrs. Robinson or Kemper suggested going to Lewes to see Kemper's father. According to Kemper they left because Mrs. Robinson was not feeling well and wanted to take a ride. Nothing was said about the expenses of the trip to Lewes. When they started to Lewes, they had no plan except to visit the father. The trip to Lewes was about 20 to 25 miles. Since the father was not at home, they decided to go to a bar in Lewes at Kemper's suggestion.

Kemper and Asmuth had about three bottles of beer. Kemper offered to pay for them. However, Asmuth insisted on paying for them. At the time they were in the bar, Mrs. Robinson and Asmuth said that Kemper was driving and that Asmuth would pay for the expenses of the evening. The expenses of the evening had never been discussed in Kemper's presence until they were in the bar in Lewes.

They left the bar and started back to Milford. On the way back to Milford defendant stated that he was tired.

During the entire evening Kemper's driving was proper and normal. Just prior to the accident Kemper was driving in a normal manner and was alert and watching what he was doing. Asmuth does not believe Kemper was sleepy before the accident or under the influence of alcohol. Asmuth does not know how the accident occurred. Except for the fact that the accident did occur, Asmuth has no knowledge that Kemper failed to keep control of the car. In all instances Kemper kept a lookout on the road ahead of him.

Kemper dozed immediately before reaching the abutment which the car subsequently hit. When the right wheel went off the road it woke him up and he tried to get back on the road but it was too late.

His sister died as a result of the accident and the other occupants of the car were injured. In the Court of Common Pleas for Sussex County, Kemper entered a plea of guilty to reckless driving.

The plea of guilty was the result of a discussion between Kemper and the Deputy Attorney General for Sussex County at a time when Kemper did not have an attorney representing him. He says he was told that he would lose his driver's license and thus his means of earning a livelihood if a charge of manslaughter were placed against him. He was in a state of shock as a result of his sister's death in the accident. He

pleaded *guilty* to the reckless driving charge as an expeditious way to get rid of the matter as quickly as possible.

Mrs. Kemper states that Kemper was not under the influence of alcohol and that she knows nothing of how the accident occurred since she was asleep.

The Delaware *guest statute* provides as follows:

"No person transported by the owner or operator of a motor vehicle, boat, airplane or other vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident was intentional on the part of such owner or operator, or was caused by his wilful or wanton disregard of the rights of others." (21 *Delaware Code*, § 6101(a)).

Defendant maintains that plaintiff was his guest at the time of the accident and that plaintiff must therefore prove that such accident was intentional on defendant's part or that it was caused by defendant's willful and wanton disregard of the rights of others.

There is a great deal of case law defining the word "guest" as it occurs in statutes such as that quoted above. See the cases collected in the Annotation: Payments or Contributions by or on behalf of Automobile Rider as affecting his status as Guest, 10 *A. L. R.* 2d 1351, and the many other annotations listed therein.

 This Court has adopted one of the general rules found in 10 *A. L. R.* 2d at 1373 by quoting the following therefrom with approval:

"Where the agreement that the occupant should contribute to the cost of operating the car was entered into before the start of the trip, or so as to make him legally obligated for such contribution, * * * it has generally been held, under the 'payment' statutes, that the occupant is entitled to the

ordinary care owed to a passenger for hire." *Wilkes v. Melice*, 9 *Terry* 206, 100 *A.* 2d 742, 744 (Superior Court, 1953).

On the other hand distinction must be made between cases involving an enforecable agreement to share expenses of an automobile trip and those in which there is merely a voluntary payment of expenses or part of them by a rider not in liquidation of a contractual liability but in return for favors of a host as a matter of social amenity as, for illustration, by paying for a meal. Thus, persons riding with others are still regarded as gratuitous guests in the absence of a pre-existing enforceable agreement. *Kerstetter v. Elfman*, 327 *Pa.* 17, 192 *A.* 663 (1937) (applying Delaware law and later cited with approval by this Court in *Wilkes v. Melice, supra*).

In the present case, the entire evening was of a social nature. The relationship of the parties is inconsistent with the idea of an enforceable agreement or contractual liability. On the contrary, the undisputed evidence clearly shows that whatever payments Asmuth made were merely in the nature of social amenities.

There is no question in the present case that the dinner was of an essentially social nature. Asmuth has presented no evidence that there was any agreement between him and Kemper at any time or even any discussion about any payments of any kind before the occasion in Lewes when Asmuth insisted on paying for the drinks. On the contrary, Asmuth states that up to that time there had been no discussion with Kemper about it.

Mrs. Robinson made the arrangements with Kemper, telling him that she would like the Kempers to meet Asmuth, that she would provide the tickets, and that they would all go to the V.F.W. The Kempers were to pick up Mrs. Robinson and Asmuth and take them to the V.F.W. There is no evidence that the Kemper's participation in the evening was contingent on Mrs. Robinson's providing the tickets or that

Kemper agreed to the arrangement because of a possible benefit to accrue to him.

There was not only no enforceable agreement or contractual liability, there was no agreement or contract at all between Asmuth and Kemper. They had not discussed the matter at all before Asmuth insisted on paying for the drinks in Lewes.

I conclude that defendant is entitled to the protection of the provisions of the guest statute. Summary judgment will be entered in defendant's favor as to those counts in the complaint which charge defendant with simple negligence.

In another portion of the complaint plaintiff charges that defendant was guilty of a willful or wanton disregard of the rights of others. Defendant seeks summary judgment in respect to these charges on the basis that the undisputed evidence fails to reveal any such disregard of the rights of others.

After the accident defendant pleaded guilty to a violation of the following statute:

"No person shall drive any vehicle in willful or wanton disregard for the safety of persons or property, and this offense shall be known as reckless driving." (21 *Delaware Code*, § 4123.)

A part of defendant's explanation for such plea is included in the recitation of the facts at the beginning of this opinion. The inferences to be drawn from such plea in the light of the other facts and circumstances and the significance of defendant's explanations present obvious jury questions. *Ando v. Woodberry*, 8 *N. Y.* 2d 165, 203 *N. Y. S.* 2d 74, 168 *N. E.* 2d 520 (1960).

Defendant's motion for summary judgment as to the negligence counts is granted. Defendant's motion as to the other counts is denied.