James Walter TRUITT, a Minor, by Howard Truitt, His Next Friend, and Pearl L. Truitt, and Howard Truitt, Individually,

v.

Russell Lowell GAINES, Appellant.

No. 13808.

United States Court of Appeals Third Circuit.

Argued March 22, 1962.

Reargued Sept. 21, 1962 and April 4, 1963.

Decided May 29, 1963.

Ernest S. Wilson, Jr., Wilmington, Del., for appellant.

H. B. Rubenstein, Leshem & Rubenstein, Wilmington, Del., for appellees.

Before BIGGS, Chief Judge, and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY and SMITH, Circuit Judges.

**462**

McLAUGHLIN, Circuit Judge.

This litigation arises out of a Delaware automobile collision in which plaintiffs, while riding in a car owned and driven by defendant, sustained personal injuries. The case was tried to the court below. The latter concluded that jurisdictional diversity of citizenship existed and that defendant's negligence caused the accident and plaintiffs' injuries. Those findings are not disputed. The court also held that under the facts, plaintiffs did not come within the Delaware Guest Statute, 21 Del. Code, Section 6101(a).[1] Defendant appeals from the judgments entered against him on the verdicts awarded the plaintiffs. The status of plaintiffs as to the Delaware Guest Statute is the only question confronting us.

Plaintiff James Truitt is a retarded child who, at the date of the accident, December 3, 1958, was ten years old. Plaintiff Pearl L. Truitt is the mother of James. In 1958, James was a pupil attending a two room rural school in Sussex County, Delaware. The school had two teachers, the defendant, who was the senior, and Miss Neal. The evidence indicated that James needed specialized and personalized attention. In November 1958 James injured one of his ankles while playing in the school yard during the lunch period. At the time Mr. Gaines and Miss Neal were in the school having their lunch. Mr. Gaines took the boy home in his automobile. Two or three days later Mrs. Truitt sent a message to Mr. Gaines that James was not getting any better and asking Mr. Gaines to visit him. Mr. Gaines and Miss Neal did so. After that James did not return to school. Mr. Gaines and Miss Neal decided to notify the visiting teacher and did so. The visiting teacher was very busy in other areas but said she would investigate the matter as soon as possible.

Several days later Mrs. Truitt again notified Mr. Gaines that her son was not getting any better and asked him to take James to a doctor. The visiting teacher had not as yet arrived at the school. Mr. Gaines sent a message to Mrs. Truitt that he would be at the Truitt home the next day and would take the boy to a doctor. Mr. Gaines did go to the Truitts the following day and brought Mrs. Truitt and James to the doctor. The accident happened on the way home from the doctor's.

■ It is argued on behalf of appellant that the latter's act in bringing plaintiffs to the doctor was performed by him solely out of charity for the Truitts, solely as a humanitarian act and therefore that the " * * * host driver received only a benefit in terms of feeling himself to be a good humanitarian." Appellant must go that far because under Delaware law if what appellant did was for the mutual benefit of the Truitts and himself, the guest statute did not bar recovery by the Truitts. Robb v. Ramey Associates, Inc., 40 Del., 1 Terry 520, 523, 524, 14 A.2d 394 (Super.Ct.Del. 1940).

■ The facts in the record do not justify appellant's conclusion. On the contrary they firmly substantiate the finding of the trial judge that the Truitts, riding in the Gaines' automobile, were not "guests" of Mr. Gaines within the state statute.

As has been stated we are concerned with a small country school where all the pupils (including the retarded) were taught together. Dr. Miller, the State Superintendent of Schools, testified that it was true that while there was no legal responsibility for so doing, dedicated teachers recognize a responsibility to determine whether a child is able to return to school and whether or not that child should be in school when he is not.

1. "(a) No person transported by the owner or operator of a motor vehicle, boat, airplane, or other vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident was intentional on the part of such owner or operator, or was caused by his wilful or wanton disregard of the rights of others."

He considered this a very real benefit to the community. Earlier he had said regarding the responsibility of seeing to it that a child injured in school obtains medical care: "It is a responsibility assumed by the teacher but not expected by us necessarily." He further stated that it was within the teacher's expected responsibility to see that a child who required immediate medical attention obtains it. He said that quite possibly a teacher at the school in the absence of the special visiting teacher would follow up unexplained absences of pupils; that such practice benefited the entire educational system; that the Board of Education encouraged teachers to take the initiative in situations where other usual work force is not then available, if it is not outside the domain of that particular teacher as he or she understands it. He concluded by saying, "I think any good teacher would visit the home of a child who was ill if he was interested in children as a whole no matter what the circumstances."

Miss Neal was a witness. She remembered saying in an affidavit:

"That Mr. Gaines there stated in her presence that since James Walter Truitt was injured at school and had not returned to school Mr. Gaines felt that as a principal and teacher it was his responsibility to take James Walter Truitt to a doctor in order to effect his return to school."

On cross-examination she was asked:

"Q. Is there any explanation you want to make about what that paragraph means to you?"

She replied:

"A. Well, the word 'responsibility' means that Mr. Gaines was just trying to be helpful, not that he was assuming some lawful duty of his, but he was just trying to be helpful as a teacher in taking the boy, because there was no other way to get the boy to the doctor's."

She was asked on redirect:

"Q. Isn't it true that both you and Mr. Gaines went to the Truitt home there at the grandmother's home in the capacity as teachers?"

She answered "Yes".

Mr. Gaines, the defendant, said that after the boy was hurt at school he took him home because he was a teacher and felt that was the thing a teacher should do and that he also did it for humanitarian reasons. Two or three days after the boy had been hurt, as Mr. Gaines put it,

"A. His mother had sent a message by one of the kids in my room that he was not getting any better and asked me to come out to see him.

"Q. In other words, the mother turned to you, one of the teachers in the school?

"A. Yes.

"Q. To assist her?

"A. Yes.

"Q. I assume you responded in like fashion?

"A. Yes."

He said he took the boy and his mother to the doctor to be helpful as both a humane individual and as a teacher. He was concerned about James Truitt's absence from school. He responded to Mrs. Truitt's request, among other reasons, because he was a teacher in that particular school.

The Board of Education Rules under "Protective Measures in Cases of Illness or Accidents" stress that "The first consideration must be the child's welfare."

The trial court found that the presence of plaintiffs in defendant's automobile at the time of the accident was " * * * obviously, not for the purpose of pleasure and not alone out of a feeling to be helpful, for it did bestow upon defendant a benefit in furtherance of his professional duties and responsibilities directed toward one of his retarded children. Under the statute, mother and son did not have guest status in defendant's motor vehicle within the meaning of the Delaware statute."

The argument that the desire to help, the dedication, the will to do that which

would enable the boy to return to school, arose not out of the defendant's employment but from the man himself is founded largely on the proposition that Mr. Gaines was not paid extra money specifically and at the time, for his service to the Truitts. Therefore, the argument would have it, he acted solely for humanitarian reasons. But Gaines said he acted both for those reasons and as the teacher of James Truitt. Dr. Miller characterized the type of service rendered by Mr. Gaines as within the teacher's expected responsibility. Miss Neal in her affidavit stated that Mr. Gaines under the circumstances of the youngster's injury felt " * * * that as a principal and teacher it was his responsibility to take James Walter Truitt to a doctor in order to effect his return to school."

■ The district court, believing that testimony, had ample reason for concluding that Mr. Gaines " * * * took the pupil for medical care to promote the mutual interests of both himself and them" and that " * * * the taking of the boy for medical help was a tangible thing, substantial because it related to defendant's employment as a teacher." Those conclusions under the governing Delaware law remove the Truitts' cause of action from the operation of that state's guest statute.

Even the argument for appellant specifically recognizes, as it states, "Expectation of benefits defeats the guest statute", citing Robb v. Ramey Associates, Inc., 1 Terry 520, 14 A.2d 394, 395. And it cannot be rightly denied that, under the above referred to trial evidence, it is fairly inferrable that Mr. Gaines by his act, in addition to helping the Truitts, had reasonable expectation of real benefits to himself as a teacher.

■ It is settled Delaware law that guest statute payment need not be cash and " * * * may represent some benefit to the defendant driver." Wilkes v. Melice, 9 Terry 206, 100 A.2d 742, 744 (Super.Ct.Del.1953). Elliot v. Camper, 8 W.W.Harr. 504, 194 A. 130, 133 (Super.

Ct.Del.1937). We noted earlier that Delaware also firmly recognizes that mutual benefit to the driver and the passenger is outside the statute. Robb v. Ramey Associates, Inc., supra; Engle v. Poland, 8 Terry 365, 91 A.2d 326, 328 (Super.Ct.Del.1952).

Finally, the recent Delaware case of Dunn v. Stumbers and Charcoal Bowl, Inc., 174 A.2d 567 (Super.Ct.Del.1961), decided after the district court judgment in this appeal, concerned facts quite analogous to our situation and was resolved upon the same principles which guided the district court here. There, Stumbers was manager of defendant Charcoal Bowl, a restaurant where plaintiff was employed as a waitress. On the morning of the accident, which was the subject of that suit, plaintiff called Stumbers and advised him through his wife that she would be unable to report for work as she had no transportation. Stumbers had his wife tell plaintiff that he would drive her to work. Thereafter he picked up plaintiff in his car. On their way to the restaurant, the car was involved in a collision and plaintiff was injured. Defendants' defense to plaintiff's claim was that Stumbers was only doing her a personal favor in line with his policy of trying to be helpful to employees in their personal affairs. They also claimed that replacement waitresses were available; that one of them could have substituted for plaintiff and did so after the collision. As the opinion (174 A.2d p. 568) puts it, "In short, defendants contend that Stumbers was not driving his car for his own benefit or that of the Charcoal Bowl."

The court held 174 A.2d page 569:

"In the case at bar, a jury might find that Stumbers' action was performed, in part, at least, for his benefit. He was the manager of the Charcoal Bowl. Two waitresses were due to report for duty at 11 A.M., when the restaurant opened. Plaintiff was one of these. At sometime that morning (at what hour is not clear), Stumbers was informed that plaintiff could not report for

work at all that day because she did not have transportation. Stumbers thus had to decide whether to provide transportation (which plaintiff had not requested) or to seek a substitute. It seems clear from the record that a relatively short drive to plaintiff's house was involved. Apart from the question as to whether a substitute waitress could have been obtained for duty that morning, Stumbers' decision to pick up plaintiff assured him of her presence. And that removed the necessity for seeking a substitute. Under this circumstance, I cannot say as a matter of law that no benefit resulted to Stumbers."

Under comparable circumstances, the district judge in this trial concluded regarding Mr. Gaines' act in taking James and his mother to the doctor:

"True, defendant's gesture was rare in today's hardboiled world. But, it was the result of complex and intermingling forces—obviously, not for the purpose of pleasure and not alone out of a feeling to be helpful, for it did bestow upon defendant a benefit in furtherance of his professional duties and responsibilities directed toward one of his retarded children. Under the statute, mother and son did not have guest status in defendant's motor vehicle within the meaning of the Delaware statute."

The Stumbers' opinion, which unmistakably indicates the present Delaware view of the particular part of its guest statute before us, correctly construed the district court decision in the action at bar, when it stated at p. 569:

"As I read the opinion, the court said that the statute did not apply because the ride 'bestowed upon defendant [teacher] a benefit in furtherance of his professional duties and responsibilities'." [2]

■ Mr. Gaines, in addition to showing himself a human being, considered his rendering of assistance to the Truitts as an integral part of his senior teaching job. By his sensitive act, far more than in the classroom, he lifted the sights of this already retarded and then physically hurt child. He was the kind of teacher needed for the James Truitts of the world. In helping the Truitts he was earning his salary. He was also revealing himself as worthy of being kept at his post and establishing his availability for larger responsibility, not by a perfunctory neutral performance of his task (which the dissenting view erroneously considers was all that was desired by the Delaware School System) but by putting his whole being into the salvaging of the handicapped boy. He did this as an individual and as part of his teaching contract. There is no need of straining to downgrade or indeed, upgrade his motivation. What he did was not only right morally but both right and proper for him to do as a teacher. His testimony, that of Dr. Miller and Miss Neal was credible, was substantial, was enough to completely warrant the trial judge in making his above stated findings. Those findings cannot be set aside by this court unless they are clearly against the weight of the evidence. They are not only not clearly against the weight of the evidence but rather they are the clear truth of the issue before us and sound under the controlling Delaware decisional law.[3]

2. The opinions in Asmuth v. Kemper, 174 A.2d 820 (Super.Ct.Del.1961) and Creed v. Hartley, unreported (Super.Ct.Del. April 30, 1962), while factually of no help on our problem, are in no way contradictory to the rule of Dunn v. Stumbers, supra.

3. Although not specifically argued before us, there appears to be a second and quite

as dispositive reason for affirming the judgments below. Closely interrelated to the fact that the presence of "payment" renders the statute inapplicable is the second and independent requirement of the statute that the claimant must not be a "guest" of the owner or operator. Both these factors—viz., that plaintiff (1) was a guest (2) without payment—must be present to bring the statute into

The judgment of the district court will be affirmed.

KALODNER, Circuit Judge (dissenting).

I agree that under Delaware law its guest statute is not applicable where a benefit is conferred upon the driver of a car in the transportation of a passenger.

I disagree, however, with the District Court's fact-finding that a benefit was conferred on the defendant here.

The District Court's fact-finding was in the nature of an ultimate finding of fact and it is well settled that such a finding is but a legal inference from other facts and as such is subject to review free of the restraining impact of the so-called "clearly erroneous rule" applicable to ordinary findings of fact by the trial court.[1] The District Court, in its opinion, stated that it reached its fact-finding by way of "certain subjective or inference facts."[2]

In the instant case there was no commercial purpose to the trip. There was no pre-arranged consideration, nor, indeed, any subsequent offer or tender. The trip was not one for pleasure, to be sure, but it was a trip for the benefit of Mrs. Truitt and her son. They were present in the defendant's automobile because Mrs. Truitt wanted a doctor to see her son. It was a trip made at her specific request.

There is no doubt on the record that the defendant made the trip because he wanted to be helpful. He had known Mrs. Truitt a long time, and, as he stated, he knew she did not have an automobile or any way of getting to the doctor.

The record shows an effort on the part of counsel for plaintiff to develop the motivation behind the defendant's willingness to be helpful. In essence, it amounts to the fact that the defendant made the trip, first, because he was asked to do so by Mrs. Truitt. He also conceded that he did it for humanitarian reasons, because of his interest in the community, because he felt that as a good teacher he should have such interest, because he was interested in the boy, even as a teacher, and wanted him to get back into school. The syllogism could be closed with the conclusion that he helped the parties because he was a good teacher. The record also makes clear that the defendant is a person with a keen sense of community feeling and holds high concepts as to what a "good" teacher should be willing to do. In short, he is a dedicated person. The Court below recognized these facts. Neverthe-

play and conversely the absence of either is fatal to its application. Engle v. Poland, 47 Del. (8 Terry) 365, 91 A.2d 326, 328 (Super.Ct.1952); Wilson v. Workman, D.C., 192 F.Supp. 852, 854 (Del. 1961).

It is urged in effect that there is no doubt that James and his mother were guests in the defendant's automobile. However, it is also acknowledged that "the trip was not one for pleasure, to be sure * * *". An automobile guest has been defined by the Delaware courts as one who takes a ride in a car driven by another merely for his pleasure, and without making any return or conferring any benefit on the owner or operator. Robb v. Ramey Associates, 40 Del. (1 Terry) 520, 14 A.2d 394, 396 (Super. Ct.1940). Closely applicable to this appeal is the statement of the court in Robb v. Ramey Associates, supra, that: "Manifestly, the relationship disclosed was not that of mere friendship, nor was it the social one of hospitality. The defendant was serving its own purpose; and, at the least, the transportation was for the mutual benefit of both plaintiff and defendant." And in an earlier opinion, Gallegher v. Davis, 38 Del. (7 W.W.Harr.) 380, 183 A. 620, 622 (Super.Ct.1936), "guest" and "automobile host" are spoken of as though one were the antithesis of the other. See Wilson v. Workman, supra. These decisions strongly indicate that plaintiffs were not within the meaning of "guest" as it is used in the Delaware statute.

1. Curtis Company v. Commissioner, 232 F.2d 167, 168 (3 Cir. 1956); Lehmann v. Acheson, 206 F.2d 592, 594 (3 Cir. 1953).

2. Reported at 199 F.Supp. 143, 147 (D.C. Del.1961).

less, it is also clear that the defendant was under no obligation because of his employment to do what he did; he was on his own time and at his own expense. The desire to help, the dedication, the will to do that which would enable the boy to return to school, arose not out of the defendant's employment, but from the man himself. To some, a charitable act is taken at face value. To those who believe they know human nature better, as cynics, a good deed is committed for the personal gratification of the donor. If the defendant believed he was benefiting himself in furtherance of his chosen profession as a teacher, it was certainly an intangible benefit, that is, it would make him a better man, a better teacher, and would coincidentally, help the community, the school system, the boy and his mother. There is nothing in the record to show that he had something more material to gain. Indeed, it was not his duty or responsibility in his position within the Delaware school system to do what he did; he was not responsible for the attendance of the boy at school, nor was he obliged to visit him after school hours.

The long and short of this case is that the defendant voluntarily helped one who needed help and asked for it. To say that doing the deed bestowed a "benefit" upon the defendant in furtherance of his professional duties merely emphasizes the intangible and speculative nature of the psychic reward a teacher may feel in altruistically helping a student and his family after school hours.

The derivation of this kind of "benefit" from a humanitarian act is not "payment" within the meaning of the Delaware Statute.

The Delaware decisions clearly evidence that only the reaping of a tangible economic benefit meets the requirement of "payment" within the meaning of the guest statute.[3]

The majority points to the fact that in Dunn v. Stumbers, 174 A.2d 567 (Del. Super.Ct.1961), the Court referred to the decision of the Court below in this case. However, there, the Court accepted the conclusion of the Court below that there was a benefit to the defendant. On this appeal, we are, of course, concerned with the question whether the record supports that conclusion in such a manner as to constitute the benefit a payment under the statute.

Judges HASTIE and GANEY join in this dissent.

3. Colombo v. Sech, 52 Del. (2 Storey) 575, 163 A.2d 270 (1960); Wilkes v. Melice, 48 Del. (9 Terry) 206, 100 A.2d 742 (1953), citing with approval, Kerstetter v. Elfman, 327 Pa. 17, 192 A. 663 (1937); Engle v. Poland, 47 Del. (8 Terry) 365, 91 A.2d 326 (1952); Robb v. Ramey Associates, Inc., 40 Del. (1 Terry) 520, 14 A.2d 394 (1940); Elliott v. Camper, 38 Del. (8 W.W.Harr.) 504, 194 A. 130 (1937).