**HESSLER, INC., a corporation of the State of Delaware, Defendant Below, Appellant,**

v.

**Walter FARRELL, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Feb. 2, 1967.

**710**

William H. Uffelman, Jr., of Theisen & Lank, Wilmington, for appellant.

William E. Wiggin, of Richards, Layton & Finger, Wilmington, for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice.

■ This is an appeal in an action brought by Walter Farrell charging breach of contract against Hessler, Inc. Hessler appeals from the denial of its motion for summary judgment. In an appeal from the denial of a motion for summary judgment by a defendant, in determining whether or not an issue of material fact exists, we accept the facts in the light most favorable to the plaintiff. Engle v. Poland, 8 Terry 365, 91 A.2d 326; Wilkes v. Melice, 9 Terry 206, 100 A.2d 742.

Briefly, those facts are that Farrell was employed by Hessler for some 40 years in a responsible capacity in its outdoor advertising business. He first worked for Hessler when its original president, Paul Hessler, Sr., was living, and continued under the presidency of his son, Paul Hessler, Jr. Paul, Jr. controls approximately 80% of the stock of Hessler, and completely dominates the management of its business through his ability to dismiss any director who opposes his policies. Generally speaking, meetings of directors are few and the directors are completely amenable to the will of the management represented by its present president. In the ordinary course of Hessler's business, contracts, hirings and firings, and other matters between Hessler and its employees are carried out without director action or approval.

During Farrell's employment, the late Paul, Sr. repeatedly assured Farrell that, upon retirement, he would receive some kind of retirement benefits. Relying upon this assurance, Farrell, over a course of years, declined several attractive offers of employment with others because of his belief that upon retirement from Hessler he would receive retirement benefits. Following the death of Paul, Sr. and the assumption of the presidency of Hessler by Paul, Jr., these assurances were repeated to Farrell by Paul, Jr.

In the late 1950s, by reason of illness, Farrell desired to limit his activities with Hessler and he agreed with Paul, Jr. to enter into a semi-retirement arrangement. He took a salary reduction to $12,000 a year, with an understanding that he would spend three months of each year at his home in Florida.

In December, 1963, when Farrell was preparing to leave for his annual three-month vacation, Paul, Jr. asked him when he intended to retire completely. Farrell reminded him of the promises he had received concerning retirement benefits. Ultimately, he and Paul, Jr. agreed orally that Farrell retire and that Hessler pay Farrell the sum of $12,000, payable monthly over a period of five years. This agreement was made subject to the approval of Hessler's counsel. Subsequently, Paul, Jr. delivered a note to Farrell stating that Hessler's counsel had approved, and that the matter would be reduced to a formal written agreement.

Farrell then went to Florida and, when he did not receive the proposed written contract, called Paul, Jr. and a complete disagreement arose between them, followed by a letter from Paul, Jr. to Farrell to the

effect that no agreement for the payment of retirement benefits was in existence and stating that he would receive three months' pay and that his employment had been terminated as of December 31, 1963.

Hessler makes three arguments in this appeal: first, that to provide Farrell with the retirement benefits demanded would constitute an *ultra vires* act on the part of the corporation; second, that the alleged agreement is void since it did not receive the approval of Hessler's Board of Directors; and, third, that the alleged agreement is void since it violates the Statute of Frauds.

■ Initially, we note that the denial of Hessler's motion for summary judgment is appealable in this case, although ordinarily not. The reason for this is that the denial of summary judgment was based, *inter alia,* upon the determination of a substantial legal question as to the authority of a corporate officer to act. This is so because the Superior Court held that, under the circumstances, Paul, Jr., as president of Hessler, had authority to bind Hessler to such a contract.

■ Since we think a substantial legal right was determined, the denial of the motion is appealable.

Hessler argues that if the alleged contract is in existence, it nevertheless is void because it is an *ultra vires* act of the corporation. Relied upon is Fidanque et al. v. American Maracaibo Co., 33 Del.Ch. 262, 92 A.2d 311.

We think, however, that this case is not governed by the *Fidanque* case for the reason that the holding in the *Fidanque* case was that a grant of additional compensation to an officer of a corporation who had already been paid in full for his services, and who had been retired for reasons of health, was an illegal gift of corporate funds since, theoretically, it was to be paid to the retired officer as a consultant for life and did not spell out any duties which

he was to perform in return for the receipt of the additional compensation.

We think, basically, the holding in the *Fidanque* case was merely that the proposed payment was an illegal gift of corporate assets.

■ Under the version of facts asserted by Farrell in the case at bar, however, such would not be true. The repeated assurances by Paul, Sr. and Paul, Jr. to Farrell that he would receive retirement benefits might well create a promissory estoppel in favor of Farrell. Restatement of Contracts, § 90; Chrysler Corp. v. Quimby, 1 Storey 264, 144 A.2d 123, 885. The reliance of Farrell upon this promissory estoppel furnishes a basis for the enforcement of the promise against Hessler. As such, therefore, it is not an illegal gift of corporate assets, but is payment made pursuant to past promises, the consideration for which Farrell supplied by continuing his employment with the expectation of receiving retirement benefits. We are of the opinion, therefore, that if these are the circumstances there was no *ultra vires* act by Hessler or an illegal gift of corporate assets.

■ Next, Hessler argues that the alleged agreement is void because it did not receive approval or authorization by action of the Board of Directors of Hessler. The Superior Court held that, since Hessler was a small, closely held family corporation, and since, under Farrell's version of the facts, corporate action was habitually taken without the approval of the Board of Directors, all of which was known to Farrell as an employee and officer of Hessler, the failure to obtain Board approval of the alleged contract was not fatal to its enforcement.

■ It is the law of this State that when, in the usual course of the business of a corporation, an officer or agent has been allowed to manage certain of its affairs, and when this is known to the other party to the contract, the authority of the offi-

cer to act for the corporation is implied from the past conduct never challenged by the corporate officials. 2 Fletcher, Cyclopedia Corporations, § 434; Mulco Products, Inc. v. Black, 11 Terry 246, 127 A.2d 851; Kelly v. International Re-Insurance Corp., 20 Del.Ch. 184, 174 A. 267.

■ If the Board of Directors of a corporation permits the corporate officers to assume power and authority in their dealings with third persons, the directors will be deemed to have clothed the officers with authority to bind the corporation by contracts entered into under that authority. 2 Fletcher, Cyclopedia Corporations, § 466.

We think, under Farrell's version of the facts, the motion for summary judgment was properly denied in so far as it was based upon the theory that affirmative action by the Board of Directors was required to validate the contract.

The final argument made by Hessler is that the contract in suit is invalid by reason of 6 Del.C. § 2714, the Delaware Statute of Frauds. This section of the Code requires that a person signing a contract for another be authorized to so sign in writing by the party to be bound.

■ Initially, we note that the memorandum delivered to Farrell and the subsequent letter reciting the terms of the contract, but refusing to enter into such a written contract, satisfied the requirement of a writing under § 2714.

■ Farrell concedes that Paul, Jr. had no written authorization from Hessler to execute the several written statements concerning the proposed contract. The point as to whether or not the president of a corporation is required to have a formal written authorization to enter into such a contract is a novel one in this State. We think, however, that no such written authorization is required for the president of a small, closely held corporation which has habitually operated its business without any formal authorization to its president. Furthermore, since a corporation can act only through its officers and agents, a statutory requirement that the authority to act be in writing does not apply to the corporation's principal executive officers. Their action is that of the corporation, itself, and no express authority in writing is required to justify their acts. 2 Corbin on Contracts, § 526; and see Rosenblum v. New York Central R. Co., 162 Pa.Super. 276, 57 A.2d 690, and McCartney v. Clover Valley Land & Stock Co., 8 Cir., 232 F. 697.

■ In the decision of this appeal it is necessary to keep in mind that the parties fiercely contest most if not all, of the determinative facts. The Superior Court held that there were material issues of fact which can be resolved only after trial on the merits. With this, we agree. It remains to be seen whether or not Farrell can successfully establish the factual situation which he asserts.

For the foregoing reasons, therefore, the judgment below is affirmed.