**Michael GROSSI, Plaintiff,**

**v.**

**Alfred ANTONELLI, Jr., and Joseph Merriggi, Defendants.**

Superior Court of Delaware, New Castle County.

Heard Oct. 19, 1979.

Decided Oct. 29, 1979.

John C. Phillips, Jr., Wilmington, for plaintiff.

Charles K. Keil and Alan T. Boyd of Bayard, Brill & Handelman, Wilmington, for Alfred Antonelli.

Stephen P. Casarino of Tybout & Redfearn, Wilmington, for Joseph Merriggi.

STIFTEL, President Judge.

The plaintiff, Michael Grossi, filed suit against the defendant, Alfred Antonelli, alleging that he was injured while riding in an automobile driven by Antonelli. The plaintiff asserts that at the time of the collision he had a business relationship with the defendant and therefore the Delaware Automobile Guest Statute does not govern this controversy. The defendant claims the Guest Statute applies since the purpose of his trip with Grossi at the time of the accident was purely social.

The defendant has moved for summary judgment on the ground that there is no dispute as to any material fact and that on the record in the case he is entitled to a judgment as a matter of law that the Guest Statute applies. It is axiomatic that in ruling upon the defendant's motion this Court must view the facts in a light most favorable to the plaintiff. *Murphy v. Godwin,* Del.Super., 303 A.2d 668 (1973). Summary judgment is inappropriate if there is a dispute as to any material fact or a dispute as to the inferences which might be drawn from such facts. *Schagrin v. Wilmington Medical Center,* Del.Super., 304 A.2d 61 (1973).

The inquiry in this matter is whether as a matter of law Delaware's Automobile Guest Statute applies. The resolution of the ques-

tion depends on whether plaintiff was a "guest without payment" under 21 *Del.C.* § 6101.

The accident involved in this action occurred on Sunday, May 16, 1976 at approximately 6:10 P.M. Plaintiff was a passenger in Antonelli's automobile which was operated by Antonelli. The events immediately preceding the accident on the Sunday in question are as follows:

The plaintiff was working on his father's garage where the defendant joined him at plaintiff's invitation at approximately 2:30 or 3:00 in the afternoon. After Antonelli arrived, the plaintiff stopped working and both parties decided to go for a ride in plaintiff's car. When it started to rain, they returned to the garage, exchanged cars and then continued their drive in the defendant's car. The rain stopped, so they switched back to plaintiff's car. Subsequently, it began to rain again. At this point the parties procured the defendant's car, having decided to go to a restaurant for dinner. It was during this excursion to dinner that the accident occurred.

In the course of the three hours between the time the parties first began riding in the plaintiff's car up to the time of the accident involving the defendant's car, the plaintiff and the defendant entered into discussions which, according to the plaintiff, raise a factual issue as to whether or not the plaintiff was a "guest without payment". 21 *Del.C.* § 6101(a). First, the parties discussed the possibility of plaintiff becoming the manager of a musical group in which Antonelli played. The band needed someone to maintain business records for them because apparently none of the musicians knew how to do so. This job possibility was somewhat speculative, however, because the other members of the band had already refused to hire Grossi. If by some chance this job did materialize, Grossi

would have been compensated. Second, they conversed about a previous job the band had played in which Grossi had in fact been involved. This involvement centered on a conversation Grossi had with a bar owner concerning what the band was to be paid. Both Antonelli and Grossi, however, only casually discussed this matter.[1] Third, the parties discussed in a general manner other employment possibilities and what they would do when their jobs with New Castle County ended upon the probable termination of federal funding of the program in which they were employed.[2] In particular, the parties talked about plaintiff's part-time carpentry work at a house in Ardencroft and the possibility of the defendant participating in this job. The defendant on one previous occasion had worked at the Ardencroft site. Neither party was able to specify at what time during the Sunday afternoon these discussions took place.

Despite plaintiff's argument that these discussions raise a fact question or inference that the purpose of the Sunday drive was business, the defendant retorts that both parties stated that the purpose was social, to wit: Antonelli testified that "We were just, more or less, just cruising around. It was Sunday afternoon. It was raining. There wasn't nothing to do."[3]; Grossi stated, "We went out and enjoyed ourselves. While we were enjoying ourselves, we were having some fun talking about the task force, the county, and everything else; another job I had in Arden."[4]

█ The Delaware Automobile Guest Statute, 21 *Del.C.* § 6101(a) provides:

"§ 6101. Injury to nonpaying guest;
* * *

"(a) No person transported by the owner or operator of a motor vehicle * * as his guest without payment for such transportation shall have a cause of action for damages against such owner or

---

**1.** Deposition of Alfred Antonelli, 19 (hereinafter A, 19).

**2.** Both Grossi and Antonelli worked together for New Castle County under a federally funded program. Deposition of Michael Grossi, 3 (hereinafter G, 3). A, 21. Both were aware of

losing this employment because the federal funding was to be curtailed. A, 21. G, 53.

**3.** A, 3.

**4.** G, 5.

operator for injury, death or loss, in case of accident, unless such accident was intentional on the part of such owner or operator or was caused by his wilful or wanton disregard of the rights of others."

Our Supreme Court has enunciated that benefit to the driver "is the crucial factor in determining whether a passenger in any given circumstance is a 'guest without payment'" under Section 6101. *Foster v. Shropshire*, Del.Supr., 375 A.2d 458, 460 (1977). The statute does not apply if the transportation was provided solely for the driver's benefit or for the benefit of both the passenger and the driver. In assessing whether such benefit exists, the courts look to what the driver could reasonably expect to derive from the transportation. *Dunn v. Stumbers*, 4 Storey 102, Del.Super., 174 A.2d 567, 568 (1961); *Engle v. Poland*, 8 Terry. 365, Del.Super., 91 A.2d 326, 328 (1952).

Although payment under the statute need not be in cash, *Fields v. Synthetic Ropes, Inc.*, Del.Super., 219 A.2d 374, 376 (1966), nevertheless, the anticipated benefit to the driver "must be something more than merely the pleasure of one's company or the exchange of social amenities". *Foster v. Shropshire, supra.*

In *Foster, supra*, our Supreme Court reversed a denial of summary judgment predicated on the inapplicability of the Guest Statute. The Court held that where a driver provided transportation to the passenger, in the course of a night on the town, in expectation of receiving similar free transportation at an unspecified future time, this benefit was merely that of social companionship, too "ethereal" to merit the status of another exception to the Guest Statute. The *Foster* Court distinguished *Mumford v. Robinson*, Del.Supr., 231 A.2d 477 (1967) because in *Mumford* transportation was provided in exchange for the receipt of free sewing lessons, a benefit of the type usually paid for. That benefit was deemed sufficiently "tangible" to remove the bar of the Guest Statute. So also, *Mumford* involved a definite agreement entered into prior to the receipt of transportation by the passenger to provide free sewing lessons.

Of similar import is *Engle v. Poland, supra*. In that case the driver agreed with the passenger in advance of the ride to introduce the passenger to a prospective customer in exchange for a commission of 25% if the passenger made the sale. The collision occurred en route to an intermediate stop the night before the planned visit to the prospect. The *Engle* Court denied the driver's motion for summary judgment reasoning that the agreement between the parties constituted a reasonable expectation of benefit to accrue to both. Having so ruled, the *Engle* Court left for the jury the issue of whether the trip was sufficiently identified with the subject matter of the agreement.

In *Dunn v. Stumbers, supra*, the driver was the manager of a restaurant. The plaintiff-passenger was a waitress at the restaurant. Plaintiff was scheduled to report for duty one morning but could not do so because of lack of transportation. Faced with the decision of procuring a substitute or providing plaintiff with a ride, the manager decided to pick up the plaintiff. A collision occurred on the return trip to the restaurant. This Court reasoned that because the manager's decision to get the plaintiff "assured him of her presence", "removed the necessity for seeking a substitute" and thus raised a question of fact as to whether the manager derived a benefit sufficient to render the passenger a paying guest, 174 A.2d at 569, summary judgment for the defendant driver was inappropriate.

In *Fields v. Synthetic Ropes, Inc., supra*, the wife of the president of the defendant corporation was injured in an accident involving a company-owned car driven by her husband. At the time of the collision, the wife and husband were driving to the company plant where the wife was to assist her husband in preparing rope samples and an itinerary for a sales trip the next day. The Court denied defendant corporation's motion for summary judgment because the wife's assistance was a tangible thing sufficiently beneficial to the corporation to send the issue to the jury.

Certain common factors are discernible from *Mumford, supra, Engle, supra, Dunn, supra* and *Fields, supra.* First, in each of those cases summary judgment for the defendant was denied on the basis of an understanding between driver and passenger clearly reached in advance of the transportation. Second, this understanding in each case was definite in terms of what the driver could reasonably expect to derive from providing the passenger with transportation. In each case, something clearly delineated in advance of the ride was to be received by the driver from the passenger: free sewing lessons; a 25% commission if a sale was consummated; the assurance of the presence of a needed employee; and, the assistance of a spouse in the performance of important tasks in preparation of a planned business trip.

█ In the instant case, in contrast to the foregoing actions, two social acquaintances [5] driving together on a Sunday afternoon, alternated cars for the avowed purpose of enjoying themselves and "having some fun talking".[6] Unlike those cases denying summary judgment, the parties here had not reached any understanding in advance of the automobile ride under which the driver could reasonably expect to receive a clearly defined benefit from the passenger's presence. The fact that the parties here, at an unspecified time over a period of three hours, merely discussed in a rather speculative fashion two somewhat questionable job possibilities, one for the passenger as manager of the driver's band, the other for the driver as a part-time carpenter, does not raise a question for the jury as to the applicability of the Guest Statute, particularly in view of the undisputed fact that at the time of the accident both parties had decided to drive to a restaurant to get something to eat.[7] In sum, the driver here really could reasonably expect nothing more from the plaintiff's presence than the pleasure of plaintiff's company and the "exchange of social amenities". *Foster v. Shropshire, supra.* Any benefit which, by inference from the facts viewed in a light most favorable to plaintiff, the defendant derived from the transportation was "too ethereal" to merit the status of another exception to the operation of the Guest Statute, *id.*[8]

The Supreme Court of this State has recently reiterated that it does not favor further judicial creation of exceptions to the Guest Statute. It has pointed out that:

> "[i]f, as many believe, the Delaware Automobile Guest Statute leads so often to unreasonable and unjust results and should be repealed forthwith, let its evils stand revealed to the General Assembly without further judicial effort to avoid a bad law by patchwork exceptions."

*Bailey v. Pennington,* Del.Supr., 406 A.2d 44 (1979, Herrmann, C. J.).

I conclude that on the record before this Court the Automobile Guest Statute applies because plaintiff was a "guest without payment". 21 *Del.C.* § 6101(a). Accordingly, defendant's motion for summary judgment on the issue of the applicability of said statute is granted. With the Guest Statute found applicable, the plaintiff's recovery is conditioned upon establishing the defend-

---

5. G, 3–4.

6. G, 5.

7. *Truitt v. Gaines,* 199 F.Supp. 143 (1961), aff'd 318 F.2d 461 (3 Cir., 1963), does not compel a different result because in *Truitt,* where an accident occurred while a teacher was transporting an injured retarded child to a doctor, the Court held that the teacher-driver did receive a benefit from the presence of the child since taking the boy for medical help was a tangible thing in furtherance of the teacher's professional duties and responsibilities. *Truitt* is thus distinguishable from the instant case because here Antonelli owed no professional duty to Grossi and had no professional responsibility for him.

8. Even if one purpose of the ride in this case was business and even if it is inferred that the defendant was initially motivated by business considerations to drive around all day with the plaintiff, at the time of the accident the parties were on merely a social excursion to get something to eat. A, 4. G, 4–6. Hence, the rationale of *Wagner v. Shanks,* Del.Supr., 194 A.2d 701, 704 (1963), dictates that summary judgment be granted in favor of the defendant on the facts now before this Court.

ant's "wilful or wanton disregard" of his rights.

SO ORDERED.