[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
In this case, a lawyer, who had worked for the defendant firm, has sued the defendant firm on several grounds. A motion to strike has been filed against the second and third counts.
 I
The second count asserts a cause of action under § 31-72 of the General Statutes. It is alleged that the defendant wrongfully withheld wages represented by the plaintiff's agreed bonus. This count incorporates the paragraphs of the first count for breach of contract. There, it is alleged that the defendant's policy was to pay its lawyers CT Page 13054 modest salaries but to distribute substantial year end bonuses. The plaintiff was hired in 1992, and in 1995 was promoted to Director. In that position, he received bonuses at the end of the years 1995, 1996 and 1997. The president of that firm told the plaintiff that his 1997 bonus was approximately 15% of the firm's net income for that year. In December 1997, disagreements developed between the plaintiff and the president of the firm. In August the plaintiff voluntarily decided to leave the firm and so informed the firm. It is then alleged that the plaintiff and head of the firm entered into discussions concerning the plaintiff's separation from the firm. It is further alleged that pursuant to the discussions it was agreed that (1) the plaintiff would not seek or accept employment in a New London County firm where defendant firm was located; (2) the head of the defendant firm would assist the plaintiff in locating in another county with a personal injury firm; (3) the reasons for the departure from the firm would not be indicated; (4) the plaintiff's employment would end on October 1, 1998 or when he was hired by another firm, whichever occurred first; (5) the plaintiff would continue to receive his regular salary through the date of termination and the firm "would pay him a bonus that would `reflect what a successful year this has been for the plaintiff and the firm'" (¶ 15(e)); (6) the date of the plaintiff's departure was extended to October 15, 1998. In paragraph 16, the plaintiff indicates that pursuant to the termination discussions he sought employment with firms outside New London County, declined an unsolicited offer from a firm in the county, sold his house and moved to another county. Paragraph 18 then alleges that on or about December 30, 1998, a lawyer contacted the plaintiff saying he was acting as a representative of the firm and that the head of the firm had determined no bonus would be paid to the plaintiff. Paragraph 19 alleges that "the firm has breached its agreements with (the plaintiff) by failing to pay him a bonus that fairly reflects his contribution to the firm's highly successful 1998 business year. As noted, these paragraphs constitute the breach of contract claim but also preface the second count's claim for wrongful withholding of wages pursuant to § 31-72. The rules governing a motion to strike are well-known; every rationally favorable inference must be given to the complaint which is under attack. Amodiov. Cunningham, 182 Conn. 80, 82 (1980).
Section 31-72 of the General Statutes provides a cause of action to any employee where the employer fails to pay "wages" as defined in § 31-71
of the General Statutes. Subsection a (3) of the latter statute defines "wages" to mean "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Shortt v. New Milford PoliceDepartment, 212 Conn. 294, 309 (1989) discussed § 31-72 and said:
 "It does not embody substantive standards to CT Page 13055 determine the amount of wages that are payable but provides penalties in order to deter employers from deferring wage payments once they have accrued."
(Emphasis added.)
The court, at p. 309, footnote 13, talked about the enhanced penalties provided for in the statute and said they reflected the legislature's view that "the payments of earned wages is a basic gut level right."
There are no Connecticut Appellate cases discussing "wages" under the act and how that term might relate to the concept of a bonus. A district court case, however, did hold that a severance allowance which the court analogized to a bonus was not to be considered wages under our act. The court said:
 "The "severance allowance" in issue is not found to be within the § 31-71a(3)'s definition of wages. The allowance was an additional payment provided to induce Crimmins to remain with Royal for the interim relocation period and not "compensation for labor or services rendered." The statute, which provides an extraordinary statutory remedy, is concerned with timely payment of wages and was enacted to discourage the unilateral withholding of wages by an employer. The "severance allowance" in issue was a bonus above and beyond the regular salary drawn by Crimmins until his termination on May 31, 1987. The six month figure appears to be an arbitrary figure provided as a bonus with no relation to any service rendered by Crimmins."
ABC Office Equipment v. Royal Consumer Business Products,721 F. Sup. 1557, 1559 (D.Conn. 1989).
All of this is not to say that a bonus cannot be considered wages under § 31-71a(3) under certain circumstances. Cook v. Alexander Alexander of Connecticut Inc., 40 Conn. Sup. 246 (1985) was a wrongful discharge case. The plaintiff employee claimed his discharge was wrongful because it violated our state's public policy against the withholding of wages. The court referred to the definition of wages referred to in § 31-71a(3) of the General Statutes — "Compensation for labor or services rendered by an employee . . ." The court denied a motion to strike where the plaintiff alleged the employer told him that he "was entitled to earn additional compensation through bonuses based onindividual production." (Emphasis added.) The plaintiff was also entitled CT Page 13056 to be included in a thrift program. The plaintiff alleged that he "began to achieving marked increased production levels, exceeding MBO (Management by Objective)" goals set by the defendant for bonuses and he had earned vested rights in the thrift plan. The defendant discharged the plaintiff and it was alleged that this was done two months before the end of the year "to avoid paying the plaintiff substantial bonuses and to prevent the plaintiff from attaining his vested thrift plan rights." In effect, the court determined, given these allegations, the bonus could be considered "wages" under § 31-71a(3). In Wuerth v. SchottElectronics, Inc., 7 CSCR 456 (1992), it was held that:
 "While the word `bonus' in its common meaning may not rise to the level of wages, the plaintiff here has alleged a connection between the additional work performed and the promise of a bonus he has alleged that the bonus was in exchange for his additional service." (Emphasis added.)
Also see Pelton v. Olin Corp., 6 CSCR 771 (1991) where the court denied a motion for summary judgment on the grounds there was a genuine issue of material fact where the employer said added monies were just paid to induce plaintiff to stay on in a transition period but plaintiff claimed the bonus was promised if he accomplished certain objectives of the employer.
In light of the reasoning of these cases, the allegations of this complaint do not set forth a legally sufficient claim under § 31-72
of the General Statutes. The plaintiff was promised a `bonus that would reflect what a successful year this has been for you and the firm'" (¶ 15). The only other reference to a "bonus" and on what terms it was paid is paragraph 11 where it is said the president of the firm represented to the plaintiff "that his 1997 bonus was approximately 15% of the firm's net income for that year."
This does not describe a bonus that accrued as a result of the plaintiff's personal efforts alone; in simplest terms it was not as the statute requires "compensation for labor or services rendered" by this plaintiff employee of the firm. The bonus was determined by the success or lack of success of all members of the firm and, at least by reference to the 1997 bonus, was an arbitrary figure reflecting in that year a percentage of the firm's net income. This would be based, on the earning of all the lawyers in the firm and is related also in part on control of expenses. What is involved here is a payment above and beyond the regular salary, an arbitrary figure in other words with no relation to any actual services performed by the plaintiff. The motion to strike the second count is granted. CT Page 13057
 II
The third count which is subject to the motion to strike lies in promissory estoppel. Our court has referred to § 90 of the Restatement (Second) Contracts for guidance in determining whether a particular claim under that doctrine is legally sufficient and has also determined that a motion to strike is an appropriate mechanism to test such legal sufficiency. D'Ulise — Cupo v. Board of Directors of Notre DameH.S., 202 Conn. 206, 214 (1987).
Section 90 reads as follows:
 "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."
In advancing its motion to strike, the defendant points to the alleged legal inadequacy of plaintiff's allegations that the defendant represented the he would be paid his regular salary through the end of his employment and a bonus that would "reflect what a successful year this has been for you and the firm."
The defendant relies on the general language of D'Ulise-Cupo to argue that even if the last mentioned statement was made to the plaintiff, which is denied, "it is at most a vague representation concerning the expectation of an unspecified bonus and is not a definite promise of a bonus of a certain amount. Also it is maintained that if it was sufficiently definite, for purposes of this motion, there is no apparent reason for the firm to expect that the plaintiff would rely on it in deciding to relocate or otherwise to his detriment. There is no statement alleged indicating a promise to pay a certain bonus in exchange for the plaintiff relocating" (p. 5 of July 21, 2000 Brief).
The prerequisites for application of the doctrine are discussed in theLaw of Contracts, Calamari Perrillo, § 6.1, pp. 249-50.
 "First a promise is necessary to create promissory estoppel. Thus a statement of intent to take future action is not sufficient . . . The content of the promise must be clear. Second, the promise must be one which the promisor should reasonably anticipate will lead the promisee to act or forbear; this requirement CT Page 13058 takes into account the expectations of the promisor. In addition the promisee must be reasonable in relying on the promise. Furthermore, the reliance of the promise must be of a definite and substantial character . . . In other words, the conduct in reliance must not only be reasonable but also must be foreseeable . . . Finally, the promise will be enforced only if injustice can be avoided by the enforcement of the promise."
The distinction between a promise and an intention to do something is somewhat elusive. In Pappas v. Bever, 219 N.W.2d 720 (Iowa, 1974) the court referred to Corbin on Contracts at § 15 which says:
 "A statement of intention is the mere expression of a state of mind, put in such a form as neither to invite nor to justify action in reliance by another person. A promise is also the expression of a state of mind but put in such a form as to invite reliance by another."
If this last pronouncement is to mean anything, it appears evident that the notion of what is a promise as opposed to a mere statement of intention is directly related to the reliance factor. In other words, if the words used would invite another person to reasonably rely on what is said to detrimentally change his or her position and the person does so and if this was foreseeable to the person uttering the words then we will call it a promise. This seems to be suggested by Corbin and is a better approach than trying to engage in a linguistic analysis of what the words "promise" and opposed to "intention" mean in a vacuum. All of this necessarily suggests the analysis must take account of the circumstances in which the words were said, the prior relations between the parties, the formality of the occasion.
In Hessler, Inc. v. Farrell, 226 A.2d 708 (Del. 1967), it was held that repeated assurances over the years by the president of the defendant corporation that the plaintiff would receive retirement benefits could form the basis of a promissory estoppel argument and the employee's reliance upon promissory estoppel in declining to obtain other employment could provide the basis for enforcement of the promise against the employer — this in a case where no definite amounts were mentioned until just before the plaintiff left the job. The man left the job and then was told he would not be receiving anything. Id., pp. 710-11. In other words, these people were in a relationship of trust over the years and the repeated assurances made it reasonable for the plaintiff to rely on them given the underlying relationship and also made it foreseeable to CT Page 13059 the defendant corporation that he would so rely.
A similar case is an older Nebraska case, Ricketts v. Scothorn,
77 N.W.2d 365, 367. Also see Feinberg v. Pfeiffer Co., 322 S.W.2d 163
(Mo., 1959). In Feinberg, the Ricketts case is cited where the facts are similar to Farrell, but in Feinberg, there had been a commitment to pay a definite amount to the employee — $200.00 per month, which was reneged upon. As noted, neither Farrell or Ricketts alluded to a definite sum being mentioned.
In this case, the words allegedly exchanged between the plaintiff and the president of the firm regarding a bonus were made in the context of a global agreement where each attorney agreed to take or refrain from taking certain actions surrounding F the plaintiff's departure from the firm. Giving the pleadings there most favorable reading, the talk about a bonus cannot be parceled out of the equation considered by the plaintiff in taking certain steps or refraining from certain actions which were detrimental to him and should have been foreseen as such by the defendant. True, the amount and terms of the bonus are not spelled out but although indefiniteness of this nature is sometimes considered by the courts as a factor in holding the reliance was not reasonable on the plaintiff's part or foreseeable to the defendant, there are factors which do not make that controlling here. By the very nature of what was a year end bonus its exact amount could not be calculated when the alleged representation about giving it was made in August and even by the middle of October when the plaintiff left the employment. Also, assuming the representation was made, which I must assume for the purposes of this motion, the representation was made in the context of a policy of the firm over several years. The plaintiff had received these bonuses for three years prior to the representation in issue and the bonuses were quite sizeable; two of the years they represented 2/3 of the base salary and one year the bonus equaled his base salary. Under these circumstances it was reasonable for the plaintiff to rely on the representations as to the bonus and foreseeable to the defendant that he would do so. Why even mention it at all in what was a fairly formal departure agreement if both sides did not consider it important to their understanding and agreement over how and in what way the plaintiff would leave the firm and what would be said and done and not done by each party prior to the departure date. The talk about the bonus, if it occurred, was not some speculative chatter but a conversation between two attorneys talking over matters of seriousness for both of them.
One other factor should be mentioned. As noted in a quote from their work, Calamari and Perillo state that the reliance of the promisee must be of a definite and substantial character — they say substantiality is a quantitative factor, In First National Bank SharesCT Page 13060v. Geisel, 853 F. Sup. 1344 (D.Kan., 1994), it was held that refraining from leaving well-paid employment is not substantial detriment. Because the court must give the pleadings their most favorable reading, the court cannot deal with this issue by means of a motion of this type but query whether promissory estoppel claim would lie in a situation where the plaintiff as much as the defendant wanted to terminate the relationship and the plaintiff at all times even knew he would and in fact did go onto a more rewarding professional setting? Where is the "detrimental" reliance. In any event, these are factual issues that cannot be resolved by a motion to strike and the allegations of paragraphs 16 take the case out of the strike zone to use a phrase appropriate to the season.
The motion to strike is granted as to the second count and denied as to the third count.
Corradino, J.